812 So.2d 196 (2002)
UNITED STATES FIDELITY & GUARANTY COMPANY
v.
OMNIBANK.
No. 2000-FC-01015-SCT.
Supreme Court of Mississippi.
March 28, 2002.
*197 W. Shan Thompson, Charles G. Copeland, Ridgeland, attorneys for petitioner.
Sam Starnes Thomas, Jackson, attorneys for respondent.
EN BANC.
WALLER, J., for the Court.
¶ 1. This case presents a certified question from the United States Court of Appeals for the Fifth Circuit. See Ramsay v. OmniBank, 215 F.3d 502 (5th Cir. 2000); M.R.A.P. 20. We are asked to determine whether, under Mississippi law, an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents extends to injuries unintended by the insured but which resulted from intentional actions of the insured if those actions were negligent but not intentionally tortious. This case involves an insured filing a third-party complaint against its insurer, alleging that the insurer had a duty to defend under the coverage of the policy. The insurer filed a motion for summary judgment asserting that the policy did not cover the allegations and there was no duty to defend. The United States District Court for the Southern District of Mississippi granted the insurer's motion for summary judgment as to its bad faith claim, but denied summary judgment as to the issue of whether the insurer had a duty to defend, and ordered the insurer to pay a portion of the insured's cost. The insured appealed to the Fifth Circuit. We conclude that according to the policy language, even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage.

FACTS
¶ 2. Georgia Ramsay financed the purchase of her car through OmniBank, which required Ramsay to maintain insurance on the car.[1] After Ramsay failed to obtain *198 the required insurance, OmniBank allegedly "force-placed" insurance coverage on the car and charged and added to the amount of loan the premiums and interest.
¶ 3. In September, 1995, Ramsay and other people similarly situated filed a complaint against OmniBank in the United States District Court for the Southern District of Mississippi. In November, 1995, Ramsay filed an amended complaint alleging that OmniBank "wrongfully forceplaced collateral protection insurance" on the plaintiffs at a cost around $1,500. The amended complaint also alleged that Omni-Bank, either negligently or intentionally, committed fraud, breach of fiduciary duty, breach of duty of good faith and fair dealing, breach of contract, violation of various statutes, violation of civil rights, negligence, loss of property rights, loss of reputation, injury to credit, creation of fictitious indebtedness, and mental and emotional distress.
¶ 4. In April, 1996, OmniBank filed a third-party complaint naming its insurer, United States Fidelity & Guaranty Company and Deposit Company of Maryland as third-party defendants. The third-party complaint alleged that USF&G owed OmniBank a defense against Ramsay's claims, potential indemnification in the event of an adverse verdict against OmniBank, and "bad faith" damages under the coverage of the commercial general liability policy and its umbrella policy with USF&G.
¶ 5. In October, 1997 USF&G filed a motion for summary judgment asserting that OmniBank's insurance policies did not provide coverage for Ramsay's allegations and did not require USF&G to provide OmniBank with a defense against Ramsay's claim. Ramsay filed a motion to dismiss the claims against OmniBank without prejudice, which motion was granted in November, 1997.
¶ 6. In May, 1998, the district court granted USF&G's motion for summary judgment as to OmniBank's bad faith claim, but denied the motion with respect to the duty to defend claim. In April, 1999, the district court entered a final judgment pursuant to Fed.R.Civ.P. 54(b) on OmniBank's duty to defend claim and ordered USF&G to pay OmniBank $10,856 in costs associated with OmniBank's defense of the Ramsay claims.
¶ 7. USF&G appealed the part of the order holding that USF&G owed Omni-Bank a duty to defend against the underlying claims to the Fifth Circuit. The Fifth Circuit subsequently certified the question now presented before this Court.

DISCUSSION

I. WHETHER THE TERMS OF THE INSURANCE POLICY ARE AMBIGUOUS.
¶ 8. Where a contract is clear and unambiguous, its meaning and effect are matters of law. Universal Underwriters Ins. Co. v. Buddy Jones Ford, Lincoln-Mercury Inc., 734 So.2d 173, 176 (Miss.1999); Overstreet v. Allstate Ins. Co., 474 So.2d 572, 575 (Miss.1985); Dennis v. Searle, 457 So.2d 941, 945 (Miss. 1984). OmniBank contends that the policy language which implicates coverage for "occurrences" or "incidents" is rendered ambiguous by exculpatory language which exempts coverage for "bodily injury" or "property damage" "expected" or "intended" from the standpoint of the insured.
¶ 9. It is well settled that ambiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company. Nationwide *199 Mut. Ins. Co. v. Garriga, 636 So.2d 658, 662 (Miss.1994); Government Employees Ins. Co. v. Brown, 446 So.2d 1002 (Miss.1984); McLaurin v. Old So. Life Ins. Co., 334 So.2d 361 (Miss.1976). OmniBank contends that any ambiguity as to whether USF&G owed a duty to defend against the Ramsay lawsuit, should be resolved in its favor. The language at issue in the commercial general liability policy provides:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
SECTION ICOVERAGES
* * *
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period.
* * *
SECTION VDEFINITIONS
* * *
12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *
The commercial umbrella liability policy provides:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM
* * *
SECTION ICOVERAGE
* * *
b. This insurance only applies to:
(1) "Bodily injury" or "property damage":
(a) Occurring during the policy period; and
(b) Caused by an "incident" that takes place in the "coverage territory";
(2) "Personal injury" caused by an "incident":
* * *
SECTION VIDEFINITIONS
6. "Incident" means:
a. An accident, including continuous or repeated exposure to the same general harmful conditions, that results in "bodily injury" or "property damage."
All damages arising from continuous or repeated exposure to the same general harmful conditions shall be deemed to arise from one "incident."
b. An offense that results in "advertising injury."
* * *
¶ 10. The exculpatory language provides:
This insurance does not apply to:
a. Expected or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
¶ 11. Thus language in both policies provides that "bodily injury" or "property damage" must be caused by either an "incident" or an "occurrence." The policies define "occurrence" and "incident," respectively, as an "accident." The exclusion in both policies mandates that coverage does not apply to "bodily injury" or "property damage" that is expected or intended *200 from the standpoint of the insured. An accident by its very nature, produces unexpected and unintended results. It follows that bodily injury or property damage, expected or intended from the standpoint of the insured, cannot be the result of an accident. We have held that unless the clause of an insurance agreement is ambiguous it should be enforced as written. Gulf Guar. Life Ins. v. Duett, 671 So.2d 1305, 1308 (Miss.1996); Nationwide, 636 So.2d at 662. Based upon the foregoing analysis, there is no ambiguity in the policy language, and OmniBank's argument is without merit.

II. WHETHER USF&G HAD A DUTY TO DEFEND.
¶ 12. Under Mississippi law, the determination of whether a liability insurance company has a duty to defend depends upon the language of the policy. Sennett v. United States Fid. & Guar. Co., 757 So.2d 206, 212 (Miss.2000). The obligation of the insurer to defend is to be determined by analyzing the allegations of the complaint or declaration in the underlying action. Id.; see also Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 403 (Miss.1997); State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So.2d 805, 808 (Miss.1970). OmniBank submits that USF&G's obligation to defend is triggered by the characterization of the claims contained in the complaint: since the complaint alleges negligence, OmniBank submits that USF&G owes a duty to defend. The complaint reads as follows:
The Defendants, jointly and severally, and in concert each with the other, negligently and/or intentionally chose an insurer which charged an exorbitant rate for collateral protection insurance which provided protection only for OmniBank.
¶ 13. The complaint further alleges that OmniBank "engaged in a course of conduct which constituted a negligent disregard for the right of the Plaintiffs." (emphasis added).
¶ 14. Mississippi federal courts have held that an insurer has a duty to defend when there is a basis for potential liability to the insured under the policy for the claims alleged against the insured. See Merchants Co. v. American Motorists Ins., 794 F.Supp. 611, 617 (S.D.Miss.1992).
¶ 15. In Allstate Ins. Co. v. Moulton, 464 So.2d 507, 510 (Miss.1985), we found that there was no coverage for unintended damages arising out of a malicious prosecution claim. Id. at 507. The insured, Moulton, swore out a complaint asserting that the defendant, Walls, stole her dog. Id. Walls was acquitted and subsequently sued Moulton for malicious prosecution. Id. Moulton then requested a defense from her insurer asserting that she did not intend for Walls to suffer the humiliation and embarrassment associated with her complaint. Id. We observed that, in determining whether there has been an occurrence,
[t]he only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force.
Id. at 509.
¶ 16. We held that the term "accident," as defined by the policy, referred to Moulton's action and not to whatever unintended damages flowed from that act. Id. at 510. Although Moulton did not intend Walls to suffer humiliation or embarrassment, she did intend for him to arrested. Id. Thus, her actions were not accidental, and as such the insurer was under no obligation to defend. Id.
*201 ¶ 17. Here, OmniBank intended to make a loan to Ramsay, intended to require Ramsay to maintain insurance, intended to place collateral protection insurance provision in the loan agreement, and intended to include the premium in the finance charge. This chain of events was set in motion and followed a course consciously devised and controlled by Omni-Bank, without the unexpected intervention of any third person or extrinsic force. Clearly under the rationale of Moulton, USF&G is under no duty to defend against the complaints alleged in the Ramsay lawsuit.
¶ 18. We must now reconcile Moulton with our decision in Southern Farm Bureau Cas. Ins. Co. v. Allard, 611 So.2d 966 (Miss.1992). There, Allard, the insured, following an altercation, shot his brother-in-law in the leg. Id. Allard claimed that he did not intend to shoot his brother-in-law and did not intend to injure him. Id. at 968. He testified that he intended to pull the trigger and fire a warning shot in his brother-in-law's general direction, but his brother-in-law unexpectedly stepped into the path of the shot and was injured. Id. Allard's insurance policy contained the same exclusion as the instant case, providing that the coverage "does not apply to bodily injury or property damage which is expected or intended by the insured." Id. The jury found that the shooting was unintentional. Id.
¶ 19. We noted that an act is "intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." Id. quoting Coleman v. Sanford, 521 So.2d 876, 878 (Miss.1988); Stevens v. FMC Corp., 515 So.2d 928, 931 (Miss.1987). The facts of the shooting created a question for the jury as to whether the victim was intentionally harmed. Allard, 611 So.2d at 968. Having resolved that question in favor of the insured, we affirmed the judgment of the trial court. Id. Contrary to OmniBank's position, Allard does not constitute a change in the law. Allard emphasized that a fact issue existed as to whether the insured intended to harm the victim. Id. This is relevant because the scope of our query was whether such act constituted an "occurrence" or "incident," as defined in the policies. We did not address whether specific damages must have been intended in order for the "intentional acts" exclusions of the policy to be applicable. Moulton held that the term "accident" refers to Mrs. Moulton's action and not whatever unintended damages flowed from that act. Moulton, 464 So.2d at 510. Thus, Allard and Moulton are consistent in that they both address the nature of the insured party's conduct, not the resulting damages of that conduct.
¶ 20. OmniBank would have us declare that an insured has coverage for intended acts so long as there is no intent to cause "bodily injury" or "property damage." Mississippi federal courts have correctly held that a claim resulting from intentional conduct which causes foreseeable harm is not covered, even where the actual injury or damages are greater than expected or intended. See Nationwide Mut. Fire Ins. Co. v. Mitchell ex rel. Seymour, 911 F.Supp. 230 (S.D.Miss.1995); New Hampshire Ins. Co. v. Vardaman, 838 F.Supp. 1132 (N.D.Miss.1993).

CONCLUSION
¶ 21. We reject as illogical OmniBank's argument that coverage exists if an insured does not intend the precise damages resulting from its intentional act. Even though OmniBank did not implement the collateral protection insurance program with the intent of being sued, it clearly intended to protect its collateral and charge the premiums to the borrowers. *202 Accordingly, we hold that an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured.
¶ 22. CERTIFIED QUESTION ANSWERED.
PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., EASLEY AND GRAVES, JJ.
McRAE, P.J., dissenting.
¶ 23. I disagree with the majority's holding that an insurer has no duty to defend against negligence actions, which include allegations that they are intentionally caused by the insured, under a general commercial liability policy. The district court correctly found a duty to defend because the language in the complaint clearly indicates negligence, or in the alternative, intentional negligence. The policy at issue is no different than any other liability policy and we have concluded that punitive damages, which stem from intentional acts of the insured, are also covered under such policies. We held in Anthony v. Frith, that "[i]t was not against public policy to require the carrier to pay punitive damages." 394 So.2d 867, 868 (Miss. 1981). See also Old Sec. Cas. Ins. Co. v. Clemmer, 455 So.2d 781, 783 (Miss.1984) (holding that liability for injuries stemming from bodily injury includes punitive damages).
¶ 24. When there is a question as to whether an insurer is required to defend against an action, "[t]he traditional test is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration." Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 403 (Miss.1997); State Farm Mut. Auto. Ins. Co., v. Taylor, 233 So.2d 805, 808 (Miss.1970). The complaint in the present case reads as follows: "The Defendants, jointly and severally, and in concert each with the other, negligently and/or intentionally chose an insurer which charged an exorbitant rate for collateral protection insurance which provided protection only for OmniBank." As per our holdings in Delta Pride and Taylor, the question must be settled in favor of giving the insured coverage under their policy.
¶ 25. The majority, in making a decision as to coverage, has looked past the complaint to the facts. This is improper. While it is true that the particular elements of the policy might change the fact that the insurer is required to defend this case, we are only required to look at the allegations in the complaint. Delta Pride Catfish, Inc., 697 So.2d at 403; Taylor, 233 So.2d at 808. If, at a later date, USF&G can prove that a policy exclusion applies, then so be it. Until such occurrence, the language in the complaint is dispositive of the fact that USF&G is required to defend the actions of its insured. Thus, the answer to the question from the Fifth Circuit Court of Appeals is that the complaint controls the coverage question at this point.
DIAZ AND EASLEY, JJ., JOIN THIS OPINION.
DIAZ, J., dissenting.
¶ 26. The essential question in this case is what test does Mississippi use to determine when an insured's actions are intentional and when they are accidental? We have two cases on this issue, Allstate Ins. Co. v. Moulton, 464 So.2d 507 (Miss.1985), and Southern Farm Bureau Cas. Ins. Co. *203 v. Allard, 611 So.2d 966 (Miss.1992). The two are clearly in contradiction of one another as pointed out by United States District Judge Walter J. Gex, III in his opinion as follows, "The Court disagrees that the Mississippi Supreme Court reached its decisions in Moulton and Allard by applying the same underlying legal propositions."
¶ 27. The majority makes an admirable attempt to harmonize the facts of this case with the reasoning in Moulton. Due to the fact that I disagree with that analogy, I respectfully dissent.
¶ 28. A duty to defend arises when a potential for coverage exists. Merchants Co. v. American Motorists Ins. Co., 794 F.Supp. 611, 616 (S.D.Miss.1992). The Merchants court further elaborated upon this issue, "the duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." Id. at 617 (emphasis added). With that understood, we must now determine "whether there is a potential for liability under the policies for the allegations raised." Id. (emphasis added).
¶ 29. As pointed out by the majority, Moulton found that the insurer did not have a duty to defend the insured because her actions were intentional, despite the fact that the consequences of her actions were not intended. Moulton, 464 So.2d at 507. Therefore, Moulton holds that the test to determine if the insured's actions were intentional is whether the insured intended the action, not the consequences of the action. Alternatively, the more recent case, Allard, holds that the test is whether the insured intended the consequences of his actions. Allard cited Coleman v. Sanford, 521 So.2d 876 (Miss.1988), in which the Court stated the following, "[a]n act is intentional if the actor desires to cause the consequences of his act or believes that the consequences are substantially certain to result from it." Allard, 611 So.2d at 968 (citing Coleman, 521 So.2d at 878). Allard also found that "[t]he word intent denotes that the actor desires to cause the consequences of his act...." Allard, 611 So.2d at 968 citing Stevens v. FMC Corp., 515 So.2d 928, 931 (Miss. 1987). And that "an intentional tort is an act of intentional behavior designed to bring about the injury." Id.
¶ 30. The federal district court also analyzed Allard and found its facts to be similar to this case,
In this case, OmniBank certainly intended to impose CPI and take other measures to protect its collateral as a consequence of the lapse of insurance coverage which the plaintiffs promised to maintain. Contrary to the position taken by F&D and USF&G, however, a reasonable argument exists that the imposition of CPI to protect collateral when the plaintiffs failed to do so was not an inherently harmful activity, but was roughly analogous to shooting a gun as a warning and to prevent being injured by the victim.
¶ 31. Like the federal district court, it is my opinion that the Allard test is controlling and provides a reasonable basis for potential liability, thus establishing USF&G's duty to defend OmniBank in this situation. Merchants, 794 F.Supp. at 617.
¶ 32. Alternatively, public policy demands that we read the policy coverage broadly in favor of the insured and the duty to defend. Id. at 617, 619. "[A]ny doubt as to the existence of a defense obligation is likewise resolved in favor of the insured." Canal Ins. Co. v. T.L. James & Co., 911 F.Supp. 225, 228 (S.D.Miss.1995) citing Rhodes v. Chicago Ins. Co., 719 F.2d 116 (5th Cir.1983). Also, when "the provisions of an insurance *204 policy are subject to two interpretations equally reasonable, that interpretations which gives greater indemnity to the insured will prevail." Taylor, 233 So.2d at 810 (citing Caldwell v. Hartford Acc. & Indem. Co., 248 Miss. 767, 160 So.2d 209 (1964)). Clearly, Allard and Moulton provide us with two conflicting interpretations of whether USF&G bears a duty to defend OmniBank in this situation.
¶ 33. It is my opinion that Allard is controlling in this case. I also believe that the conflict between the ruling in Allard and the ruling in Moulton requires us to find a duty to defend in this case under public policy.
McRAE, P.J., EASLEY AND GRAVES, JJ., JOIN THIS OPINION.
NOTES
[1] Ramsay filed this action along with John McIntosh, Troy Sims, and "all similarly situated borrowers/co-borrowers, and others, Does 1-100" against OmniBank, Prudential Property And Casualty Insurance, Ross & Yerger, P.A., Ross & Yerger, Inc., Ross & Yerger Financial Systems, and National Underwriters of Delaware, Inc., and other similarly situated Does 1-100.