**QBE INSURANCE CORP., Plaintiff**

v.

**BROWN & MITCHELL, INC.,
et al., Defendants.**

**Civil Action No. 307CV602TSL–JCS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 16, 2008.

Thurman L. Boykin, III, Page, Kruger & Holland, P.A., Clyde X. Copeland, III, Harris, Jernigan & Geno, PLLC, Ridgeland, MS, Jackson, MS, for Plaintiff.

Bobby L. Dallas, Bryan P. Doyle, Walter C. Morrison, IV, John P. Scanlon, Sessums, Dallas & Morrison, PLLC, Ridgeland, MS, C. Paige Herring, Scott, Sullivan, Streetman & Fox, PC, Kirk Gavin Ladner, Eaves Law Firm, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the cross-motions of plaintiff QBE Insurance Corp. and defendant Brown & Mitchell, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions have been fully briefed and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiff's motion for summary judgment should be granted, from which it follows that Brown & Mitchell's summary judgment motion should be denied.

This case presents the issue whether a certain commercial umbrella liability insurance policy issued by plaintiff QBE Insurance Corp. (QBE) to defendant Brown & Mitchell, Inc. (B & M) provides coverage to B & M and its employee, Nicholas Goodyear, for a wrongful death suit brought against B & M and Goodyear, among others, seeking to damages for the death of Eleazar Casiano. Casiano died on April 26, 2005, when a trench in which he was working collapsed. At the time of the accident, Casiano was employed by Big Warrior Corporation, which had been hired to install a forced main sewer line. Big Warrior had, in turn, hired B & M to provide engineering services in connection with the project, and at the time of his death, Casiano was allegedly assisting B & M employee Nicholas Goodyear with taking measurements in the trench, having been directed to enter the trench to assist

Goodyear by Richard Lindley, Big Warrior's project foreman.

Following Casiano's death, his beneficiaries filed suit in the Circuit Court of Harrison County, Mississippi, against Big Warrior and a number of its employees, including Lindley, and against B & M and Goodyear, seeking to recover damages on account of Casiano's wrongful death. At the time of the incident which resulted in Casiano's death, B & M had in effect a policy of commercial umbrella liability insurance with QBE, which provided coverage to B & M and its employees acting in the course and scope of their employment. Upon receiving notification of the Casiano lawsuit, QBE filed the present declaratory judgment action, seeking a determination that its policy provides no liability coverage to B & M or Goodyear for the claims in the Casiano complaint. QBE maintains there is no coverage because the Casiano complaint does not allege an "occurrence" as defined in the QBE policy and/or because the Casiano complaint alleges a "bodily injury" that was expected or intended from the standpoint of the respective insured and/or that took place during the rendering of or the failure to render a professional service. QBE has now moved for summary judgment, taking the position that as a matter of law, for one or more of these reasons, its policy provides no coverage for B & M or Goodyear against the claims brought against them in the underlying lawsuit. B & M has filed a cross-motion for summary judgment.

■ Among the reasons advanced in support of its motion, QBE argues that its policy affords no coverage to B & M and/or Goodyear for the claims in the Casiano complaint because the complaint does not allege that the "bodily injury" for which recovery is sought was caused by an "occurrence" as that term is defined by the QBE policy and applicable law. Under Mississippi law, the determination of whether a liability insurance company has a duty to defend and/or indemnify depends upon the language of the policy. *U.S. Fidelity & Guarn. Co. v. Omnibank*, 812 So.2d 196, 200 (Miss.2002) (citing *Sennett v. United States Fid. & Guar. Co.*, 757 So.2d 206, 212 (Miss.2000)). Generally, the obligation of the insurer to defend or to indemnify is to be determined by analyzing the allegations of the complaint or declaration in the underlying action, and comparing them to the coverage provided by the policy to determine whether the claims fall within the policy's coverage. *Id.*

In their complaint, the Casiano plaintiffs allege that the trench which collapsed and killed their decedent did not meet the minimal requirements for trench design, construction, inspection and safety established by law and by applicable professional and construction standards. In particular, they charge that the trench was dug without proper soil tests to determine the maximum allowable slopes and allowable configurations for sloping and benching, and as a result, the grade of the trench was too steep, as the walls were near vertical. Further, at only five feet wide, the trench was too narrow for the placement of shoring and trench boxes. And there was no means of egress within twenty five feet of Casiano's location in the trench. The danger of collapse, they charge, was exacerbated by the facts that the trench had been dug in such a way to undermine the adjacent roadway, excavated materials from the trench had been piled up to approximately eighty inches high along the edge of the trench, and at the time of the accident, another Big Warrior employee, was operating a track hoe at the site.

As to B & M, the Casiano plaintiffs allege that "as the engineering firm responsible for overseeing the project, [B & M] was responsible for the ultimate de-

sign, construction, inspection of and safety issues associated with the trench which collapsed," and that B & M at all times owed their decedent a duty "to perform its professional responsibilities as engineers in accordance with the appropriate standards in its oversight of the project." They allege that, "as an employee for [B & M] and individually as an engineer," Goodyear owed their decedent a duty "to perform his professional responsibilities as an engineer with the appropriate professional standards and construction industry standards." The Casiano plaintiffs allege that B & M and Goodyear "acted negligently and with reckless disregard for the life and safety of Eleazar Casiano in the performance of [their] responsibilit[ies] by:

    a.  Failing to conduct a manual soil test;

    b.  Allowing the trench to be dug with near vertical walls;

    c.  Allowing the roadway to be undermined by the trench construction;

    d.  Allowing excavated materials to be placed on the edge of the trench;

    e.  Failing to insure that the sidewalls of the trench were shored with support walls;

    f.  Failing to insure that a working trench box was in place for workers' safety;

    g.  Allowing a track hoe to operate along the trench while Mr. Casiano was in it;

    h.  Enlisting Mr. Casiano to assist in the measuring of the trench from inside it;

    i.  Failing to insure that a safe means of egress was available to Mr. Casiano;

    j.  Failing to instruct as to the recognition and avoidance of hazards in working in an unprotected trench;

    k.  Failing to stop unsafe acts of the contractor;

    l.  Contributing to the unsafe acts of the contractor;

    m.  Other acts of negligence to be shown at the trial of this matter.

Turning to QBE's policy, the policy provides, in pertinent part, as follows:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.

The policy further provides:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy also provides:

> This insurance does not apply to:
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

■ "[T]he Mississippi courts and federal courts interpreting Mississippi law have had ample opportunity to review what 'accident' means in the exact context of the policy language at issue." *Burlington Ins. Co. v. Bal Enterprises, LLC*, Civil Action No. 2:07cv127KS-MTP, 2008 WL 4426134, 4 (S.D.Miss. Sept. 25, 2008). In *U.S. Fidelity & Guaranty Co. v. Omnibank*, 812 So.2d 196 (Miss.2002), the court was presented the question "whether, under Mississippi law, an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents extends to injuries unintended by the insured but which resulted from intentional actions of the insured if those actions were negligent but not intentionally tortious." *Id.* at 197. In *Omnibank*, which involved the identical policy provisions at issue

here, the court initially rejected an argument by the insured that the policy language which implicated coverage for "occurrences" was rendered ambiguous by exculpatory language which exempts coverage for "bodily injury" or "property damage" "expected" or "intended" from the standpoint of the insured. *Id.* at 199–200. After acknowledging that under the terms of the policy, "bodily injury" must be caused by an "occurrence," that "occurrence" was defined as an "accident," and that the exclusion mandated that coverage did not apply to "bodily injury" or "property damage" that was expected or intended from the standpoint of the insured, the court declared, "An accident by its very nature, produces unexpected and unintended results. It follows that *bodily injury or property damage, expected or intended from the standpoint of the insured, cannot be the result of an accident.*" *Id.*[1] (emphasis added). The court went on to explain that the proper focus is on the insured's conduct, rather than the resulting harm, stating that "a claim resulting from intentional conduct which causes foreseeable harm is not covered, even where the actual injury or damages are greater than expected or intended." *Id.* at 201 (citing *Nationwide Mut. Fire Ins. Co. v. Mitchell ex rel. Seymour,* 911 F.Supp. 230 (S.D.Miss.1995)). The court concluded by holding that "an insurer's

duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured," *id.* at 202, or put another way, "even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage," *id.* at 197.

Numerous cases involving identical policy language to that at issue here, in keeping with *Omnibank,* have recognized that coverage does not extend to claims for " 'injuries unintended by the insured but which resulted from intentional actions of the insured' even if those actions were not intentionally tortious but rather only negligent. If the acts themselves were not accidental, even if they may have been negligent, then there is no 'occurrence.' " *Burlington Ins. Co.,* 2008 WL 4426134, 4.

In *ACS Const. Co., Inc. of Mississippi v. CGU,* 332 F.3d 885, 890 (5th Cir.2003), the court found there was no coverage for claims in the underlying suit that the insured contractor had been negligent in hiring a subcontractor, which in turn negligent installed a waterproofing membrane to the roofs of munitions bunkers as a result of which they leaked, because "even though the installation of the membrane was done negligently, the action of installing the membrane was not accidental nor unintended to implicate coverage under the policy." *Id.* at 890. The court in *ACS*

---

**1.** The court recognizes the Mississippi Supreme Court's holding in *Zurich American Insurance Co. v. Goodwin* that "[u]nder Mississippi law, unless the policy specifically states that it is viewed from the perspective of the insured, [the determination whether an event was an "accident"] will be viewed from the perspective of the injured." 920 So.2d 427, 432–33 (Miss.2006) (citing *Allstate Ins. Co. v. Moulton,* 464 So.2d 507, 510 (Miss. 1985), and *Georgia Cas. Co. v. Alden Mills,* 156 Miss. 853, 853, 127 So. 555, 557 (1930)). By virtue of its conclusion in *Omnibank* that "bodily injury" which is "expected or intended from the standpoint of the insured" cannot

be an "accident," the Supreme Court appears to have implicitly recognized that the policy under consideration does provide for the determination whether an event was an "accident" to be viewed from the perspective of the insured. *See also Sanford v. Century Sur. Co.,* Civil Action No. 2:07cv253–KS–MTP, 2008 WL 879704, 3 (S.D.Miss. Mar. 28, 2008) (recognizing that courts look at the incident from the standpoint of the injured party to see if an accident occurred when the policy does not define "accident," but applying *Omnibank*'s holding and rationale in case involving identical policy language as involved here and in *Omnibank* ).

reiterated the principle recognized in *Omnibank*, that under Mississippi law, in determining whether an incident constituted a covered occurrence, or accident, the pertinent question is whether the underlying actions of the insured were intentional. The court explained that an incident is not an "occurrence," and is therefore not covered under the policy if, " 'whether prompted by negligence or malice, (1) [the insured]'s acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within [the insured]'s foresight and anticipation.' " *Id.* at 891 (quoting *Allstate Ins. Co. v. Moulton*, 464 So.2d 507, 509 (Miss.1985)). *See also Acceptance Ins. Co. v. Powe Timber Co., Inc.*, 219 Fed.Appx. 349, 352 (5th Cir.2007) (describing pertinent issue as "whether 1) the insured's triggering actions were intentional; and 2) the resulting injuries were foreseeable.").

■ *Burlington Insurance Co. v. Bal Enterprises, LLC*, 2008 WL 4426134, a recent case from this court considering the issue whether there was an "occurrence" under the same policy provisions at issue here, involved an underlying suit against a saloon owner by the wrongful death beneficiaries of an individual who had been run over by an intoxicated patron of the saloon. The plaintiffs in the underlying suit alleged, among other things, that the saloon owner was negligent in failing to provide adequate or trained security staff, failing to prevent the intoxicated patron from leaving the saloon driving an automobile or in not providing him alternate transportation, and in failing to advise their decedent not to get in the vehicle with the intoxicated patron. *Id.* at 4. The court concluded that although the claims sounded in negligence, coverage of the claims was "foreclosed by *Omnibank*'s conclusion that 'even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage.' " *Id.* Simply put, "[t]he hiring, training and supervision activities of BAL as well as the decision not to prevent Irwin's departure were certainly intended," and no credible argument could be made that such acts or omissions were "accidental" or "unintended." *Id.*[2]

In yet another recent case involving these same policy provisions, *Nationwide Mutual Insurance Co. v. Panther Creek Construction Co., Inc.* Civil Action No. 3:06CV172 HTW–LRA, 2008 WL 886047, 4–5 (S.D.Miss. Mar. 30, 2008), the court held that claims against a contractor for negligence in the construction of a residence were not a covered occurrence, because the insured's actions, even if negligent, were intentional. Numerous other cases have recognized and applied these principles in cases involving identical, or substantially similar policy provisions, to find that an insured's intentional acts, even where not intentionally tortious but merely negligent, did not constituted an "accident" or "occurrence" and hence were not covered. *See, e.g., Acceptance Ins. Co. v. Powe Timber Co., Inc.*, 219 Fed.Appx. 349, 352 (5th Cir.2007) (insured's failure to include warning with allegedly dangerous product was not an "occurrence," as there

---

**2.** In its response to QBE's motion and in support of its own motion, B & M argues that none of the cases relied on by QBE in support of its motion "involve conventional torts founded in simple negligence." Regardless of whether that may fairly be said of the cases cited by QBE, those cases do explicitly recognize the principle that acts which are negligent, if intended, do not constitute an "occurrence" under the policy provisions at issue. In any event, there are other cases not cited by QBE, of which *Burlington Insurance Co. v. Bal Enterprises, LLC*, Civil Action No. 2:07cv127KS-MTP, 2008 WL 4426134, 4 (S.D.Miss. Sept. 25, 2008), is but one example, that do involve "conventional torts founded in simple negligence."

was little question that its failure to include a warning was intentional, i.e., there was nothing to suggest that the insured intended to include a warning but inadvertently did not do so, and as the insured knew or should have known the product was dangerous without the warnings so that the resulting injuries were within its foresight); *Mendrop v. Shelter Mut. Ins. Co.*, Civil Action No. 2:05CV15–P–B, 2007 WL 4200827, 7 (N.D.Miss. Nov. 26, 2007) (finding no "accident" and hence no "occurrence" in case involving defective workmanship, observing that " 'the natural results of the negligent and unworkmanlike construction of a building do not constitute an accident' "); *Fairmont Specialty Ins. Co. v. Smith Poultry & Farm Supply, Inc.*, Civil Action No. 2:05cv396–KS–JMR, 2006 WL 2077584, 4 (S.D.Miss. July 24, 2006) (although policy did not expressly define "accident," court concluded that "a claim for defective construction, whether negligent or intentional, is not covered under the 'occurrence' definition contained in this, and most any other, commercial general liability policy," reasoning that the insured's "actions in constructing the chicken houses was certainly intentional," and that "[c]onsequences related to that construction and which flow from that conduct are simply not an 'occurrence' under this CGL policy which would trigger both a duty to defend and indemnify") (citing *ACS Const. Co.*, and *Omnibank* ).[3]

In the court's opinion, the language of this policy and applicable law compel a conclusion that QBE's policy affords no coverage for the Casiano claims. All of the allegations involve intentional actions and/or inaction, and harm that was foreseeable for such actions and/or inaction, and therefore the Casianos do not allege an "accident" or "occurrence." Accordingly, the court concludes that QBE is entitled to summary judgment.[4]

---

3. In the court's opinion, the Fifth Circuit's recent opinion in *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395 (5th Cir.2008), is distinguishable from the cited cases, and from the case at bar, because the underlying action against the insured involved allegations of negligence that was, or could have been found to be *inadvertent,* as contrasted with intentional actions that are alleged to be negligent. In *Delta & Pine Land,* a group of farmers had filed suit against the insured, alleging it had mixed old seed with new seed, resulting in a diminished crop yield. While the plaintiffs originally alleged that DPL had intentionally mixed old and new seed, they subsequently amended their complaint to allege that the mixing was done in error, or negligently. In determining whether the insurer had a duty to defend, the Fifth Circuit concluded it was "irrelevant" whether or not the insured admitted it intended to blend old and new seed because what was determinative of the duty to defend issue was the allegations of the farmers' complaint. In rejecting the carrier's argument that the policy's exclusion for "property damage . . . expected or intended from the standpoint of the insured" barred coverage and foreclosed any duty to defend, the court's focus was on the fact that the underlying complaint charged that the insured's actions were negligent, not intentional: "[T]he Farmers primarily assert[ed] damages resulting from the negligent and grossly negligent mixing of seed and not damages resulting from an intentional injury." *Id.* at 402. The court rejected the carrier's argument that *Omnibank* supported a finding of no coverage, noting that whereas the *Omnibank* court had held that "a claim resulting from *intentional conduct* which causes foreseeable harm is not covered, even where the actual injury or damages are greater than expected or intended," (emphasis added), the farmers had alleged that the insured's conduct, i.e., seed mixing, itself was negligent. *Id.* at 403 n. 8. Presumably, if the farmers had alleged that the insured intended to mix old and new seed, then regardless of whether the insured had intended to cause injury, if such actions resulted in foreseeable harm, i.e., harm that could have been "expected from the standpoint of the insured," then coverage would have been precluded under the reasoning of *Omnibank*

4. Consequently, the court need not consider QBE's additional argument that the claims

Therefore, it is ordered that QBE's motion for summary judgment is granted, and B & M's cross-motion for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

fall within the policy's professional services exclusion.