# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 15, 2011

Lyle W. Cayce
Clerk

No. 10-60601

NATIONAL BUILDERS AND CONTRACTORS INSURANCE COMPANY,
a Risk Retention Group,

Plaintiff-Appellee,

versus

SLOCUM CONSTRUCTION, L.L.C.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 2:09-CV-217

Before SMITH, WIENER, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Slocum Construction, L.L.C. ("Slocum"), appeals a summary judgment on

the request of National Builders and Contractors Insurance Company ("NBCI")

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60601

for declaratory relief. NBCI, Slocum's insurer, sought a judgment that it has no duty to defend Slocum against a counterclaim by Robert Youngblood. We affirm.

I.

Kelvin Anderson contracted with Slocum to build a house. Anderson staked out a parcel of land, but Slocum did not know the land was not Anderson's. It is uncertain whether Anderson was aware that the land belonged to Youngblood, who is related to Anderson and held the land in trust for Walter McKenzie. Slocum believes that Youngblood was aware that it was building the house on his land. When Anderson could not pay Slocum for the house, Slocum tried to sell it. During due diligence, Slocum discovered that Youngblood owned the land and offered to purchase it from him. When Youngblood refused, Slocum sued Youngblood for fraud and unjust enrichment; Youngblood countersued for trespass, seeking lost rental profits.

Slocum petitioned NBCI for a defense and indemnity against Youngblood's counterclaim. Slocum's commercial general liability ("CGL") policy covers damages related to "bodily injury" and "property damage" only if it "is caused by an 'occurrence.'" The policy further defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

NBCI sought declaratory relief, arguing that Slocum's actions were not an "accident" and thus were not covered by the policy, or, in the alternative, that there was no "property damage" or "bodily injury," and that several exclusions precluded coverage. The district court granted NBCI summary judgment, holding that Slocum's actions were not an accident, that there was bodily injury but no property damage, and that even if Slocum's actions were not an accident, several contractual provisions excluded coverage.

2

No. 10-60601

II.

"We review [a] summary judgment de novo." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 435 (5th Cir. 2011). There is no dispute regarding the facts, but only as to the meaning and effect of the insurance policy, which is a question of law. *See U.S. Fid. & Guar. Co. v. OmniBank*, 812 So. 2d 196, 198 (Miss. 2002). Therefore, this court reviews the interpretation of that policy *de novo*. *Nat'l Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir. 1990). Because we sit in diversity, Mississippi insurance law determines the scope of the policy's coverage. *See Blakely v. State Farm Mut. Auto. Ins. Co.*, 406 F.3d 747, 751 (5th Cir. 2005) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938)). An insurer has "no duty to defend a claim outside the coverage of the policy." *Moeller v. Am. Guar. & Liability Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996). The factual allegations of the complaint in the underlying action determine whether that duty arises. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997).

III.

Slocum's insurance policy, like nearly all CGL policies, provides coverage only if the damage is caused by an "occurrence," which, as stated above, is synonymous with an "accident." Mississippi looks to the actions of the insured, not the resulting damages, to decide whether there was an accident. *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507, 510 (Miss. 1985). The motivation behind those actions is irrelevant if the insured intended to act. *See OmniBank*, 812 So. 2d at 197 ("Even if an insured acts in a negligent manner, that *action* must still be accidental and unintended to implicate policy language." (emphasis added)). The insured's actions must have been "inadvertent." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1161 (Miss. 2010).

Slocum's appeal turns on the distinction between an inadvertent action

3

No. 10-60601

and a mistake. The former is an accident, as described above, but the latter is not, because the insured intended the action underlying the mistake, even if he did not intend the results or if he based his action on erroneous information.[1]

*Moulton* clarifies the difference between an insured's intentional actions and their unintended results. There, the insured swore out a criminal complaint against a man she suspected of stealing her dog. After the man was arrested and the charges dismissed, he brought a malicious prosecution claim against the insured, who sought a defense from her insurer. Her policy contained a nearly identical definition of "occurrence."[2] In denying coverage, the Mississippi Supreme Court determined that

> [a]t the heart of the instant controversy is whether this Court will interpret the word "accident" as referring to Mrs. Moulton's actions swearing out a complaint that Anthony Walls had stolen her dog or whether "accident" refers to the consequences of that act. . . . [T]he term accident refers to Mrs. Moulton's action and not whatever unintended damages flowed from that act.
>
> Mrs. Moulton obviously intended to swear out the complaint against Anthony Walls. Although she may not have intended for him to suffer humiliation or embarrassment, she certainly intended for him to be arrested.

*Moulton*, 464 So. 2d at 510. Moulton's actions may have been based on a mistaken belief, but the court stated in *dictum* that "it would make no difference whether [Mrs. Moulton's] acts were prompted by malice or negligence, or some

---

[1] Although that distinction is not formally expressed in Mississippi caselaw, it is a synthesis of the holdings in *Moulton* and *OmniBank*, discussed *infra*.

[2] *Compare Moulton*, 464 So. 2d at 508 ("'Occurrence' means an accident, including injurious exposure to conditions, which results, during the endorsement period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."), *with* Slocum's policy ("'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . . This insurance does not apply to . . . '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured.").

other motivating force." Id. at 509.

The Mississippi Supreme Court later turned that *dictum* into precedent. *See OmniBank*, 812 So. 2d 196 (answering certified question from *Ramsay v. OmniBank*, 215 F.3d 502 (5th Cir. 2000)). The plaintiffs in the underlying action in *Ramsay* had taken out loans from Omnibank to finance their cars and alleged that the bank had negligently force-placed unnecessary insurance coverage, thereby increasing their loan, premium, and interest payments. The bank sought a defense from its insurer, which argued that the bank's actions were intentional and thus not covered by the CGL policy. The bank countered that the suit was based on the bank's negligent conduct, and it was an open question under Mississippi law whether negligent, yet intentional, actions may be considered accidents.

We certified that question to the Mississippi Supreme Court, which held, applying *Moulton*, that an insurer has no duty to defend "negligent actions that are intentionally caused by the insured." *OmniBank*, 812 So. 2d at 202. Even though the bank did not intend to overcharge the plaintiffs, it did intend to charge them some amount. *Id.* The bank may have acted negligently and may have made a mistake, but it also acted intentionally, so there was no accident to defend.

We look to the allegations in the complaint to determine whether NBCI has a duty to defend. Youngblood's countersuit against Slocum is for trespass, an intentional tort under Mississippi law that requires entering another's property, without right, for one's own purpose. *Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1357 (Miss. 1998). To trigger coverage under the policy, therefore, Slocum must have accidentally built a house on Youngblood's land.

Slocum has not convincingly distinguished its mistake in building the

No. 10-60601

house from the errors of the insureds in *Moulton* and *OmniBank*.[3]  The insured

in *Moulton* did not intend to swear out a complaint against a person who had not

stolen her dog, but she did intend to swear out a complaint against the plaintiff.

The insured in *OmniBank* did not intend to overcharge the plaintiffs, but it did

intend to charge them some amount.  Slocum intended to build a house on the

land that Anderson staked out.  It may not have intended to build one on prop-

erty that did not belong to Anderson, but that is the unintended result of its in-

tentional actions.  Therefore, its actions were not an accident under the terms

of its policy, and NBCI has no duty to defend or indemnify.[4]

Summary judgment is AFFIRMED.

---

[3] Nor did it even attempt to do so.  The thrust of Slocum's argument is that its action was building a house on Youngblood's land and that it did not intend to do that.  But Slocum is conflating an intended action with unintended results, as did the insured in *Moulton*.  Slocum cites *Scottsdale Insurance Co. v. Bungee Racers, Inc.*, No. 4:04CV376-P-B, 2006 WL 2375367 (N.D. Miss. Aug. 14, 2006), which held that the insured's sale of a defective amuse-ment park ride was accidental because it did not intend to sell a defective product.  That deci-sion, however, (1) is unreported; (2) is not from a Mississippi state court; (3) relied heavily on *ACS Construction Co. v. CGU*, 332 F.3d 885 (5th Cir. 2003), which the Mississippi Supreme Court in *Architex* later determined was partially incorrect; and (4) did not mention the appar-ent conflict it created with *Moulton* and *OmniBank*.

[4] We need not decide whether the policy's exclusions apply, because "exclusionary lan-guage . . . cannot be used to create coverage where none exists." *Architex*, 27 So. 3d at 1160 (quoting *ACS*, 332 F.3d 885).

6

No. 10-60601

JACQUES L. WIENER, JR., Circuit Judge, specially concurring:

I concur in the result reached by the panel majority that National Builders and Contractors Insurance Company ("NBCI") does not have a duty to defend its insured, Slocum Construction, L.L.C. ("Slocum"), against Robert Youngblood's counterclaim for willful trespass. I write separately, however, because I respectfully disagree with the panel majority's reasoning; specifically, its position that, under Mississippi law, Slocum's acts *as a whole* do not constitute an "occurrence" within the meaning of NBCI's insurance policy. Even though, I am convinced that, to the contrary, a contractor's (1) intentional construction of a building (2) accidentally, i.e., negligently, on the wrong property would constitute an "occurrence," this cannot control our determination of coverage today. Why? Because we are instructed by Mississippi law to look only to the *substance* of the complaint — in this case, the substance of Youngblood's counterclaim — to determine whether it alleges acts that are covered by the terms of the insurance policy. When we do that here, we must conclude that NBCI does not have a duty to defend Slocum against Youngblood's counterclaim because the *substance* of his complaint's allegation is that Slocum has committed (and continues to commit) only the *intentional* tort of *willful* trespass, which by definition cannot be an accident. Like the panel majority, I would affirm the district court's summary judgment, but I would do so under a different legal analysis than does the panel majority — an analysis that I believe comports more faithfully with Mississippi law.

## I.  Slocum's Actions Constituted an "Occurrence"

It is undisputed that Kelvin Anderson came to Slocum and presented misleading documents — "a deed and a survey to the property" — thereby falsely representing to Slocum that he — Anderson — was the owner of the property. Anderson had also physically staked off the property "in accordance with the survey" and directed Slocum to build the house there. These facts are not

7

No. 10-60601

mentioned by the panel majority in its opinion, but they clearly demonstrate — at least to me — that Slocum's act of building the house *on Youngblood's property* was an "occurrence" within the meaning of the NBCI insurance policy.

To begin with, these facts distinguish this case from *Allstate Insurance Company v. Moulton*[1] and *United States Fidelity & Guaranty Company v. Omnibank*,[2] the two Mississippi cases on which the panel majority so strongly relies. In *Moulton*, the insured, Mrs. Moulton, mistakenly had the police arrest an innocent man for stealing her dog, and that man later filed an action against her for malicious prosecution. The Mississippi Supreme Court emphasized that, not only must the insured's acts be committed "consciously and deliberately," but also "the likely (and actual) effect of those acts [must be] *well within* [the insured's] foresight and anticipation."[3] This inquiry essentially boils down to one of foreseeability of the alleged injury. Mrs. Moulton obviously had a natural expectation that, once arrested, the man (who asserted his innocence, from the start, claiming that Mrs. Moulton was wrong in her prosecution of him) "would be subjected to the embarrassment, deprivation of liberty, and other indignities claimed by [him]."[4] In contrast, Slocum could not have reasonably expected that by entering onto property to build a house commissioned and paid for by Anderson (who himself asserted that he *was* the owner of the property and backed up that assertion with documents falsely confirming that Slocum was right), Slocum would trespass on Youngblood's property. For this reason, unlike Mrs. Moulton, it was not "*well within*" Slocum's "foresight and anticipation" that the *"likely* (and actual) effect" of its construction of the house on property

---

[1] 464 So. 2d 507 (Miss. 1985).

[2] 812 So. 2d 196 (Miss. 2002) (en banc).

[3] *Moulton*, 464 So. 2d at 509 (emphasis added and quotation omitted).

[4] *Id.* (quotation omitted).

8

No. 10-60601

Anderson claimed to own would be that Slocum would in fact trespass on property owned not by Anderson but by Youngblood.

Likewise, in *OmniBank*, an individual financed the purchase of her car through OmniBank, but she did not obtain car insurance, as required by OmniBank. The bank then allegedly "force-placed" insurance coverage on the car and added the cost of the premiums and interest to the amount of the loan. After the borrower learned of the bank's acts, she filed suit against OmniBank for "wrongfully force-plac[ing] collateral protection insurance" on her.[5] The Mississippi Supreme Court determined that "OmniBank intended to make a loan to [the individual], intended to require [the individual] to maintain insurance, intended to place [the] collateral protection insurance provision in the loan agreement, and intended to include the premium in the finance charge."[6] In no way then did OmniBank *not intend* to force-place insurance coverage on the borrower, and OmniBank could have anticipated that all of the borrower's alleged damages could result from its intentional acts. OmniBank's insurance company therefore had no duty to defend OmniBank against that lawsuit in which the substance of the borrower's complaint was that OmniBank *intentionally* took the wrongful action of force-placing collateral protection insurance.

Since handing down its opinions in *Moulton* and *OmniBank*, the Mississippi Supreme Court has issued another relevant opinion, *Architex Association, Inc. v. Scottsdale Insurance Company*,[7] which the panel majority largely ignores despite the *Architex* court's pertinent reflection on *Moulton* and *OmniBank*. *Architex* turned on whether the insured building contractor's

---

[5] *OmniBank*, 812 So. 2d at 197-98.

[6] *Id.* at 201.

[7] 27 So. 3d 1148 (Miss. 2010).

No. 10-60601

*intentional* act of hiring subcontractors excluded the insured from coverage for defective work performed by those subcontractors. The Mississippi Supreme Court noted that it had previously held "[i]n the non-construction-defect context of *Omnibank*" that "'[t]he *only relevant consideration* is whether, according to the declaration, the *chain of events leading to the injuries* complained of were *set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force.*'"[8] Importantly, however, the court went on to distinguish both *Moulton* and *OmniBank* from *Architex*, explaining:

> Unlike in this case, the insureds in both *Moulton* and *Omnibank* were the parties who engaged in intentional and allegedly tortious conduct leading to the injuries complained of. Thus, the insured's intentional actions did not constitute "accidents," and the damages resulting therefrom did not amount to "occurrences" under the respective policies. In the present case, by contrast, the only act or conduct considered by the circuit court was the hiring of subcontractors, without consideration of whether the underlying acts or conduct of the insured or the subcontractors *proximately causing* "property damage" were negligent or intentional or were otherwise excluded by policy language. While the alleged "property damage" may have been "set in motion" by Architex's intentional hiring of the subcontractors, the "chain of events" may not have "followed a course consciously devised and controlled by [Architex], without the unexpected intervention of any third person or extrinsic force."[9]

Here, no one argues that when Slocum intentionally entered onto the property and intentionally built the house for Anderson, it did so anticipating that the property on which it built was not owned by Anderson. The panel majority would nevertheless liken the instant case to *Moulton* and *OmniBank*,

---

[8] *Id*. at 1153-54 (quoting *Omnibank*, 812 So. 2d at 200) (emphases and alteration in original).

[9] *Id*. at 1159 (quoting *Omnibank*, 812 So. 2d at 200-01) (footnote omitted and emphasis added).

asserting that "Slocum intended to build a house on the land than Anderson staked out" just the way that "[t]he insured in *Moulton* did not intend to swear out a complaint against a person who had not stolen her dog, but she did intend to swear out a complaint against the plaintiff" and that "[t]he insured in *OmniBank* did not intend to overcharge the plaintiffs, but it did intend to charge them some amount."[10] But, in making that analogy, the panel majority ignores the thrust of *Architex* that courts should look to whether the conduct that proximately caused the alleged "property damage" was intentional, not whether the insured has performed an intentional act in the course of causing the property damage.

As in *Architex*, the "chain of events" here did not "follow[] a course consciously devised and controlled by [Slocum], without the unexpected intervention of any third person or extrinsic force."[11] Even if it did intentionally lay the foundation of the house and erect its walls, Slocum did not intentionally enter onto the property (falsely identified by Anderson as his own) with knowledge that it did not have the true owner's permission— the one and only proximate cause of the one and only allegation of injury advanced in Youngblood's counterclaim: *willful* trespass. Slocum would not have built the house for Anderson on property not owned by Anderson (and would not have trespassed on Youngblood's property) *but for* Anderson's intervening (mis)direction that Slocum build the house on that specific piece of property. Therefore, under Mississippi law, Slocum's actions as a whole did constitute an "occurrence" within the definition of NBCI's insurance policy. But our inquiry cannot end here.

## II. Youngblood Accuses Slocum of Intentional Actions

---

[10] Majority Opinion at 6.

[11] *Architex*, 27 So. 3d at 1159 (quotation marks and citation omitted).

No. 10-60601

Regardless of my view that Slocum *intentionally* built the house but did so *accidentally* on Youngblood's land, the core problem with the panel majority's analysis is that it fails to begin with, and focus on, the specific "property damage" *alleged* by Youngblood — *intentional* trespass. The panel majority conflates Slocum's several distinct acts and assesses them as a whole without acknowledging that Youngblood does not complain of injury from Slocum's construction of the house on his property. Youngblood only complains of Slocum's willful trespass on his property. We have explained previously that, "[u]nder Mississippi law, whether a liability carrier has a duty to defend depends on the policy language and the allegations of the complaint. Under this so-called 'eight-corners' test, the allegations in the complaint are analyzed against the language in the policy to determine coverage and the duty to defend."[12] Courts must look to the complaint because, among other things, the injury complained of "must be *alleged* to have been caused by an 'occurrence.'"[13] The panel majority correctly points out that "Slocum's insurance policy, like nearly all CGL policies, provides coverage only if *the damage* is caused by an 'occurrence,' which [ ] is synonymous with an 'accident.'"[14] But we first must know what *damage* is being asserted within the four corners of the complaint.

Here, Youngblood's counterclaim alleges:

> That the said Slocum Construction company has *willfully trespassed* upon said property and continues to do so buy [sic] allowing persons unknown to Mr. Youngblood to traverse upon said

---

[12] *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (citations omitted).

[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399-400 (5th Cir. 2008) (emphasis added). *See also Equal Emp't Opportunity Comm'n v. S. Publ'g Co.*, 894 F.2d 785, 790-91 (5th Cir. 1990) ("Under Mississippi's 'allegations of the complaint' rule if the factual allegations of the complaint bring the action within coverage of the policy, the insurer has a duty to defend.").

[14] Majority Opinion at 3.

No. 10-60601

> property and rents said property and receives profits therefrom
> against the right of peaceful occupancy entitled to by Mr.
> Youngblood.
>
> WHEREFORE PREMISES CONSIDERED, counter plaintiff
> Youngblood hereby files this his [sic] counter-complaint for trespass
> and damages herein and . . . herein asks said court to find that
> counter defendant has *willfully* and unlawfully *trespassed* upon the
> property of said Robert Youngblood and has sought economic
> benefits therefrom without payments to the trustee now in effect
> and that they should be enjoined from entering on said property and
> shall be liable for the resulting damages to be set forth more fully
> herein upon a full and final hearing . . . .[15]

This counterclaim against Slocum does *not* allege that Slocum "damaged" Youngblood's property by building the house on it. What it does allege is that Slocum has and *continues to* commit the *intentional* tort of *willful* trespass on Youngblood's property. Under Mississippi law, "willful trespass" must be *knowing*, as "[o]ne who acts in good faith and with reasonable prudence, under a belief that land in question is his own, is not criminally liable for willful or malicious trespass in going upon land of another . . . ."[16] The only claim asserted against Slocum is that it has *intentionally and knowingly* trespassed and continues to trespass *intentionally and knowingly* on Youngblood's property. In no way, then, can Slocum's behavior — as alleged by Youngblood within the *four corners* of his counterclaim — be considered an accident or an "occurrence" within the *four corners* of NBCI's policy, even if Slocum's act of building the house arguably was an "occurrence."

As for NBCI's duty to defend, it matters not whether Slocum did in fact *accidentally* (and *not* willfully) trespass on Youngblood's property. "With regard to coverage and duty to defend, under Mississippi law, the ultimate outcome or

---

[15] (emphases added).

[16] *Johnston v. State*, 98 So. 2d 445, 450 (Miss. 1957). This principle would apply equally if the alleged trespasser acted in good faith and with reasonable prudence under a belief that he had permission to enter from the property owner.

13

merit of the claim is irrelevant with regard to the question of a duty to defend."[17] What matters is what Youngblood *alleged* that Slocum did — here, a necessarily intentional action, which by its own definition cannot be considered an "occurrence" under NBCI's policy — regardless of what Slocum in fact did.

This is why courts, like those of Mississippi, which employ the eight-corners rule, consistently deny insurance coverage under general liability insurance policies for claims of intentional torts.[18] For example, under Texas law, which also mandates application of the eight-corners rule, "a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not."[19] Although Mississippi courts have not made this

---

[17] *Delta*, 530 F.3d at 399 (citation omitted).

[18] *See, e.g.*, *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 720 (Miss. 2004) ("There are therefore three reasons why coverage must be denied; first, the plain face of [the third party's] complaint does not trigger the policy's coverage and duty to defend; secondly, the torts complained of were intentional; and last, public policy compels us to refuse coverage for intentional and illegal actions."); *Moulton*, 464 So. 2d at 508-10 (asking if "malicious prosecution [is] the type of 'occurrence' contemplated by the insurance policy," acknowledging that "[m]alicious prosecution is an intentional tort," and denying coverage). Even in *OmniBank*, the Mississippi Supreme Court recognized that the specific question it was answering was "whether, under Mississippi law, an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents extends to injuries unintended by the insured but which resulted from intentional actions of the insured if those actions were negligent *but not intentionally tortious*." 812 So. 2d at 197 (emphasis added)). Presumably, if the alleged actions of the insured *were* intentionally tortious, there would be no question that an insurer would not have a duty to defend under a general commercial liability policy covering only negligence.

[19] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 9 (Tex. 2007) (citation omitted). *Compare Moulton*, 464 So. 2d at 509 ("[T]he likely (and actual) effect of those acts [must be] well within [the insured's] foresight and anticipation."). *See also Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 724 (5th Cir. 1999) ("[b]oth state and federal courts sitting in Texas have . . . den[ied] insurance defense and coverage in a steady stream
(continued...)

No. 10-60601

distinction as pellucidly as have Texas courts, the Mississippi Supreme Court has made clear, in the context of qualified immunity, that "[n]egligence is not an intentional tort."[20]

\* \* \*

In sum, Youngblood's one and only allegation — the only claim that NBCI is asked to defend against — is that Slocum committed the intentional and knowing tort of *willful* trespass. That just can't be an accident! We take the wrong path if, like the panel majority, we seek to determine whether Slocum's intentional act of building the house was also intentionally done on Youngblood's property or rather was negligent or accidental. We should only consider what Youngblood has alleged in his counterclaim, viz., that Slocum's entrance onto his property constituted willful (intentional) trespass. As NBCI's insurance policy only covers negligence and does not cover intentional torts such as willful trespass, NBCI does not have a duty to defend Slocum against Youngblood's counterclaim for only an intentional tort.[21] With continued respect, I must

---

[19] (...continued)
of cases [ ], all of which involve the alleged commission of an intentional tort by an insured. In cases involving claims against an insured for damage arising out of his alleged negligence, however, a second line of cases has developed . . . ." (internal footnote omitted and emphasis in original)).

[20] *Webb v. Jackson*, 583 So.2d 946, 950 (Miss. 1991) (explaining that, if an officer was guilty of negligence, then he did not fall under the "intentional tort" exception of qualified immunity). *See also Jordan v. Wilson*, 5 So. 3d 442 (Miss. App. 2008):

It is true that there is no cause of action for "negligent assault." However, this is so not simply because there exists no such cause of action but, rather, because *an intentional tort cannot be committed negligently*. The holding in *Webb* simply recognizes that a claim alleging an intentional tort and a claim alleging negligence are *mutually exclusive*, in that, one who is found to have acted negligently cannot at the same time be found to have acted intentionally.

(footnote omitted and emphases added).

[21] As NBCI points out, "There is no tort of 'negligent' trespass in Mississippi."

15

conclude that the panel majority's analysis is flawed by virtue of lumping together Slocum's *intentional* act of construction and its *accidental* act of doing so on the wrong property, instead of focusing solely on Youngblood's claim of willful (intentional) trespass — which tort is simply not covered by NBCI's policy. This (and only this) is why NBCI does not owe Slocum a defense.