611 So.2d 966 (1992)
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Mississippi Farm Bureau Mutual Insurance Company and Mississippi Farm Bureau Casualty Insurance Company
v.
George D. ALLARD and Thomas S. Rowland.
No. 90-CA-0450.
Supreme Court of Mississippi.
December 31, 1992.
Sam E. Scott, Ott Purdy & Scott, Jackson, for appellants.
John B. Clark, Daniel Coker Horton & Bell, Betty Ruth Fox, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
*967 ROY NOBLE LEE, Chief Justice, for the Court:
Southern Farm Bureau Casualty, Mississippi Farm Bureau Mutual Insurance Company and Mississippi Farm Bureau Casualty Insurance Company (hereinafter referred to as "Farm Bureau") filed suit against Thomas Rowland ("Rowland") and Dr. George Allard ("Allard"). Farm Bureau sought a determination as to whether the actions of Allard, its insured, fell within the intentional tort exclusions found in three separate insurance policies. The suit involved a shooting by Allard which resulted in the amputation of Rowland's lower left leg.
Prior to the suit at bar for declaratory judgment, Farm Bureau defended Allard, under a reservation of rights, for damages on account of the personal injury sustained. The jury awarded Rowland $106,750 in damages. Allard contends that Farm Bureau should pay this amount pursuant to the policies issued. The jury found that Allard's actions were not intentional and that the insurance policies provided coverage to the insured, Allard.
Farm Bureau appeals to this Court and presents five issues for decision. Four of the issues, however, are without merit and do not warrant discussion. We will address only the fifth issue:

WAS THE SHOOTING OF THOMAS ROWLAND AN INTENTIONAL ACT, AND IF SO, DOES COVERAGE EXIST?

FACTS
Dr. George Allard and Tom Rowland were related by affinity, Allard having married Rowland's sister. Upon the death of Rowland's and Mrs. Allard's father, 600 acres were left for division between senior Rowland's wife and three surviving children, Thomas and Gus Rowland, and Edna Earl Rowland Allard. Seven years prior to partitioning the land, Thomas Rowland had the exclusive use of the property, which he farmed. Enmity manifested itself when the land was partitioned and Rowland no longer was allowed full use of the 600 acres.
Rowland seemed always to start trouble. He had a reputation in the community as being a bully and a violent person. On one occasion, he had an altercation with his brother, Gus, who was visiting in their mother's home. As a result, Gus vowed he would never return to the community as long as Rowland lived there. Without question, Rowland and Allard could not get along and usually trouble arose when they confronted one another.
A shooting occurred on December 17, 1987, resulting from an encounter between Dr. Allard and Rowland on a dirt road, which traverses the family property. Allard and his son, Ray, had gone to the farm to move their cattle from one pasture to another in order for the veterinarian to check and examine the stock. The pastures did not abut one another and Allard had to lead the cattle down the road about a quarter of a mile to relocate them. This was done by trolling, i.e., leading the cattle with a bucket of feed, causing them to follow Allard. Ray stayed behind the cattle in a truck to pick up strays.
As Allard moved along the road, he saw what appeared to be Rowland's pick-up truck parked on the dirt road in front of him and behind the truck was a forestry commission truck towing a bulldozer. In order to prevent frightening the cattle, Allard led them off the road onto unfenced land which was owned by Rowland and was not used as either farmland or pastureland. It was barren with the exception of weeds. When Rowland saw Allard on his land, he ran toward Allard, in an excited manner, hollering and screaming at him for being on his land. The two men engaged in a heated discussion.
About that time, Ray Allard drove up and saw what was happening. Remembering the threats and high temper of Rowland, Ray took a 12 gauge shotgun from a gun rack at the back window and handed it to his father after Allard had retreated into the bed of the truck. Rowland, who was sixty years old, 6'2" in height, and weighed 230 pounds, had followed Allard, who was age sixty-five, 5'8" in height and weighed 170 pounds, to the truck. According to *968 Allard, he pointed the gun toward the ground about an inch or two from Rowland's left foot when he pulled the trigger. He stated he fired the shot in order to bring Rowland to his senses and that Rowland stepped forward into the line of fire. Except for that, Rowland would not have been hit.

ISSUE
Farm Bureau contends that the shooting of Thomas Rowland was an intentional act by Allard and that the act and the resulting damages were not covered under the policies.
Under the homeowner's policy, # HO876802, one of the exclusions to liability coverage states that coverage "does not apply to bodily injury or property damage which is expected or intended by the insured." Further, liability is limited to bodily injury resulting from an "accident." Finally, this policy excludes all injuries "arising out of business pursuits of any insured."
The general liability policy, # GL402895, contains language excluding "injury, sickness, disease, death or destruction of property arising out of an act by any insured that is intentionally designed to do harm to others." This policy states that it applies only to "accidents or occurrences", thereby defining an occurrence as "an event, or continuous or repeated exposure to conditions, which unexpectedly causes injury during the policy period."
Similar language is found in the excess or umbrella policy, # UB050468, which provides that the policy will not apply to "any act committed by or at the direction of the insured with intent to cause personal injury or property damage." The umbrella policy provides coverage for personal injury or property damage "caused by or arising out of an occurrence happening any where in the world." An "occurrence" is further defined as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured."
The sole question in this case is whether Dr. Allard intentionally harmed Thomas Rowland.
In the shooting case of Coleman v. Sanford, 521 So.2d 876 (Miss. 1988), Coleman sued Sanford for damages sustained when Sanford shot Coleman with a handgun through the windshield of Coleman's vehicle. Coleman's liability insurance carrier was allowed to intervene in the suit and recovery was denied because it was held that the shooting did not arise out of the ownership, maintenance or use of the vehicle, but was the voluntary, deliberate act which rendered use of the vehicle incidental. However, the opinion held that "[a]n act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." Coleman, 521 So.2d at 878. See also Stevens v. FMC Corp., 515 So.2d 928, 931 (Miss. 1987).
In Stevens, the Court applied the definition of intent from Restatement of Torts to determine whether Stevens' injuries were the result of intentional torts: "[t]he word `intent' ... denotes that the actor desires to cause the consequences of his act... ." Stevens, 515 So.2d at 931 (quoting Restatement (Second) of Torts § 8A (1965)). The Court further held "an intentional tort is an act of intentional behavior designed to bring about the injury." Stevens, 515 So.2d at 931. See Mullins v. Biglane Operating Co., 778 F.2d 277, 279 (5th Cir.1985).
The record reflects that Allard was familiar with guns and had experience in shooting them. The facts in the record reflect he did not intend to shoot or hit Rowland with the shotgun, but only to stop him by firing in front as he approached. Persons who are knowledgeable about the use of firearms and are experienced in shooting shotguns, are aware that the range at which Allard shot in front of Rowland could cause a shot pattern probably no larger than the muzzle of the shotgun and that the shot would not begin to spread at that range.
In our opinion, the facts of this shooting created a question for the jury as to whether *969 or not Allard intentionally shot Rowland in the foot. The jury resolved that issue in favor of Allard and the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.