938 So.2d 871 (2006)
Rhonda M. ROGERS, Appellant
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 2004-CA-02074-COA.
Court of Appeals of Mississippi.
February 21, 2006.
Rehearing Denied June 20, 2006.
*872 Austin R. Nimocks, Biloxi, attorney for appellant.
Eric Joseph Dillon, Jackson, William C. Griffin, attorneys for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Allstate Insurance Company filed a complaint for declaratory judgment seeking a determination that Allstate had no duty under a homeowner's policy to defend or indemnify Rhonda M. Rogers in an ongoing lawsuit. Allstate subsequently filed a motion for summary judgment. The trial court granted the motion for summary judgment, finding that there was no coverage available under Rogers's homeowner's policy. Aggrieved by the judgment, Rogers appealed. Finding no error, we affirm the judgment of the Harrison County Circuit Court.

FACTS
¶ 2. The basis for the underlying tort action began on August 23, 1994, when Ms. Rogers and her then husband, Herbert Lubin, legally separated. The Chancery Court of Harrison County appointed Dr. Gasparrini, a clinical psychologist, to perform a custody evaluation of Ms. Rogers and Mr. Lubin's children and to submit a written report. In addition to submitting a report, Dr. Gasparrini testified as to certain custody matters during the trial, which began on May 14, 1994. After the trial, the chancery court awarded custody of the children to Mr. Lubin.
¶ 3. On October 17, 1994, Ms. Rogers filed a formal ethics complaint against Dr. Gasparrini with the American Psychological Association (APA). Ms. Rogers also filed an ethics complaint with the Mississippi Board of Psychological Examiners. On February 23, 1995, the Mississippi Board of Psychological Examiners sent Ms. Rogers a letter stating that her complaint had been dismissed, as "no ethical violation of the Ethical Principles of Psychology occurred."
¶ 4. On February 12, 1996, nearly one year after receiving the dismissal letter from the Mississippi Board of Psychological Examiners, Ms. Rogers received a letter from the APA stating that it "decided to open this up as a formal ethics case." Ms. Rogers then typed and mailed multiple letters to various health care providers with whom Dr. Gasparrini had business *873 relationships. In the letters, set on or about February 27, 1996, Ms. Rogers informed the health care providers that Dr. Gasparrini was under investigation by the APA. Ms. Rogers wrote: "[s]ince your organization has a professional relationship with Dr. Gasparrini, I thought you would need to know that Gasparrini is currently under investigation by the American Psychological Association."
¶ 5. Dr. Gasparrini learned of the letters sent by Ms. Rogers. He filed suit against her and "unknown others yet to be named" in circuit court on February 27, 1997. Dr. Gasparrini alleged that he suffered financial damages and damages to his reputation as a result of Ms. Rogers's writing and mailing the letters to the health care providers with whom he had a business relationship. Dr. Gasparrini further claimed that Ms. Rogers's conduct was persistent and malicious, with the intent to harm him economically and professionally. Dr. Gasparrini's claims against Ms. Rogers included the following: (1) false light; (2) invasion of privacy; (3) civil conspiracy; (4) tortious interference with business relations; (5) defamation; (6) abuse of process; and (7) malicious prosecution. Dr. Gasparrini requested injunctive relief, and sought compensatory and punitive damages.
¶ 6. On May 23, 1997, Allstate hired a law firm to defend Ms. Rogers and to file an answer to Dr. Gasparrini's complaint on her behalf.
¶ 7. More than six years later, on March 17, 2003, Allstate decided that it was not legally obligated to defend Ms. Rogers and it filed a complaint for declaratory judgment in the United States District Court for the Southern District of Mississippi, Southern Division. The complaint sought a determination that Allstate had no duty under the Deluxe Plus Homeowners Policy ("the policy") purchased by Ms. Rogers on July 11, 1996 to defend or indemnify Ms. Rogers in the lawsuit brought against Rogers by Dr. Gasparrini.
¶ 8. On July 22, 2003, Dr. Gasparrini filed his third amended complaint in circuit court against Ms. Rogers. The amended complaint added Allstate as a defendant. The amended complaint also included the previously unnamed defendants, Gregory and Sandra Bredemeier, as co-conspirators.[1] Dr. Gasparrini removed the claims of abuse of process and malicious prosecution from the amended complaint. In addition to requests for injunctive relief and compensatory and punitive damages, Dr. Gasparrini sought a declaration from the Circuit Court of Harrison County regarding Ms. Rogers's coverage under the policy.
¶ 9. Allstate filed an answer to the third amended complaint with a counterclaim and cross-claim for declaratory judgment on September 4, 2003. On July 2, 2004, Allstate filed a motion for summary judgment. Allstate presented the circuit court with several arguments in support of its position that Ms. Rogers's actions were not covered under the policy. Allstate argued that there was never an "occurrence" as defined by the policy and by Mississippi law. Allstate further argued that Dr. Gasparrini did not suffer "property damage" or "bodily injury" as defined by the policy and by Mississippi law. Finally, Allstate asserted that Ms. Rogers's actions were excluded from coverage because they were intentional acts under the policy.
¶ 10. The relevant provisions of the policy provided the following:

*874 Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and covered by this part of the policy.
. . . .
We do not cover any bodily injury or property damages intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of any insured person.
The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." The policy defined "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." Finally, the definition of "bodily injury" read as follows:
[P]hysical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include:
(a) any venereal disease;
(b) Herpes;
(c) Acquired Immune Deficiency Syndrome;
(d) AIDS Related Complex;
(e) Human Immunodeficiency Virus; or any resulting symptom, effects, condition, disease or illness related to (a) through (e) listed above.
¶ 11. The circuit court entered an order granting Allstate's motion for summary judgment, on September 8, 2004. The court found that Ms. Rogers's actions were not an "occurrence" under the policy. The court also concluded that Ms. Rogers's actions were intentional acts, and were therefore excluded from coverage. Although the court declined to address the property damages and bodily injury issues, it acknowledged that those issues would likewise support summary judgment for Allstate.
¶ 12. Aggrieved by the judgment, Ms. Rogers appealed. She now asserts that the circuit court erred in granting summary judgment and presents the following assignments of error: (1) the court erred in determining that the facts demonstrated did not qualify as an "occurrence" under the policy; (2) the circuit court erred in determining that the facts fell within the intentional acts exclusion of the policy; and (3) the circuit court erred in failing to interpret and harmonize the Mississippi Supreme Court's opinions in Moulton, Omnibank, and Allard.

STANDARD OF REVIEW
¶ 13. An appeal from summary judgment is reviewed de novo. Jacox v. Circus Circus Mississippi, Inc., 908 So.2d 181, 183(¶ 4) (Miss.Ct.App.2005). Our standard for reviewing a grant of summary judgment is the same as the standard employed by the trial court, namely, whether any genuine issues of material fact exists. Id.

ISSUES AND ANALYSIS
I. Whether the circuit court erred in determining that the facts demonstrated did not qualify as an "occurrence" under the policy.
¶ 14. Ms. Rogers maintains that her actions qualified as an occurrence both under the terms of the policy and as defined by Mississippi law.
¶ 15. Under Mississippi law, whether a liability insurance company has a duty to defend hinges on the language of the policy. United States Fid. & Guar. *875 Co. v. Omnibank, 812 So.2d 196, 200(¶ 12) (Miss.2002) (citing Sennett v. United States Fid. & Guar. Co., 757 So.2d 206, 212(¶ 19) (Miss.2000)). The test for determining whether the insurer has an obligation to defend is accomplished by examining the allegations in the complaint or the declaration in the underlying action. Id. (citing Sennett, 757 So.2d at 212(¶ 19)). In Merchants Co. v. American Motorists Ins. Co., 794 F.Supp. 611, 617 (S.D.Miss. 1992), the federal district court stated that "the duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy."
¶ 16. In order for coverage to exist, the triggering event must be an "occurrence," which is defined by the Allstate policy as an "accident." By its very nature, an accident is something that "produces unexpected and unintended results." Omnibank, 812 So.2d at 200(¶ 12). In Omnibank, the supreme court reiterated its position that in determining whether there has been an occurrence "the only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries . . . were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." Id. (quoting Allstate Ins. Co. v. Moulton, 464 So.2d 507, 509 (Miss.1985)).
¶ 17. In Moulton, the insured swore out a complaint that Walls stole her dog. Moulton, 464 So.2d at 507. After the charges against Walls were dismissed, he sued Moulton for malicious prosecution. Id. The court determined that although Moulton may not have intended to embarrass or humiliate Walls, she "obviously intended to swear out the compliant" and "[s]he certainly intended for him to be arrested." Id. at 509. Thus, the court held that the test to determine whether the action in question was an accident is whether the insured intended the action, not whether the insured intended the results of that action. Id. at 510.
¶ 18. However, in Southern Farm Bureau Cas. Ins. Co. v. Allard, 611 So.2d 966 (Miss.1992), the court took a difference approach to determine whether an accident had occurred. In that case, the insured shot his brother-in-law in the leg. Id. at 966. Allard asserted that it was not his intention to shoot or to injure his brother-in-law, but only to fire a warning shot. Id. at 968. Allard's insurance policy contained an exclusion similar to the case at bar, for "bodily injury or property damage which is expected or intended by the insured." Id. The case went to trial and a jury found that the shooting was unintentional. Id. On appeal, the supreme court affirmed the judgment of the trial court, noting that an act is "intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." Id. (citing Coleman v. Sanford, 521 So.2d 876, 878 (Miss.1988)).
¶ 19. In Omnibank, the court attempted to reconcile the apparent incongruence between the Moulton and Allard decisions by stating that Allard did not constitute a change in the law, but "emphasized that a fact issue existed as to whether the insured intended to harm the victim." Omnibank, 812 So.2d at 201(¶ 19). The court went on to say that the Allard decision merely sought to determine whether an accident had occurred, not whether the intentional acts exclusion applied. Id. The court concluded that the two decisions were consistent "in that they both address the nature of the insured party's conduct, not the resulting damage of the conduct." Id. Finally, the court agreed with the ruling of Mississippi federal courts that "a claim resulting from intentional conduct *876 which causes foreseeable harm is not covered, even where the actual injury or damages are greater than expected or intended." Id. (citing Nationwide Mut. Fire Ins. Co. v. Mitchell ex rel. Seymour, 911 F.Supp. 230 (S.D.Miss.1995)).
¶ 20. In the instant case, Ms. Rogers's actions clearly cannot be seen as an accident under either an Allard or Moulton analysis. As in Moulton, Ms. Rogers consciously and purposely set the chain of events in motion when she initiated her letter-writing campaign. Although she might not have specifically intended for Dr. Gasparrini to suffer financial loss, Ms. Rogers admitted that her purpose in the mailing the letters was to prevent others from suffering as she did. As this Court held in Gasparrini v. Bredemeier, 802 So.2d 1062, 1067(¶17) (Miss.Ct.App.2001), "[i]t goes without saying that letters sent to Gasparrini's employers, insinuating that he was an unethical psychologist, were intended to bring about one result, namely, to deter individuals and companies from employing Gasparrini." Thus, similar to Allard, the mailing of the letters was not an accident. Ms. Rogers desired to cause the consequences of her actions, namely, harm to Dr. Gasparrini's business relationships.
¶ 21. Accordingly, we hold that Ms. Rogers's actions were not covered under the policy, as they did not constitute an accident. Moreover, even if the circuit court determined that Ms. Rogers's actions constituted an occurrence, Dr. Gasparrini did not allege that he suffered any bodily injury or property damage. The policy provided coverage for "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage." The policy defined bodily injury as some "physical harm to the body," and property damage as "physical injury to or destruction of tangible property." Dr. Gasparrini claimed to have suffered financial loss and damages for loss to his reputation.
¶ 22. Clearly, Dr. Gasparrini's claims for damages do not amount to bodily injury, or physical harm to the body. Moreover, in Audubon Ins. Co. v. Stefancik, 98 F.Supp.2d 751, 756 (S.D.Miss.1999) the court held that financial losses and tangible injuries to reputation through defamation claims are not injuries to tangible property. We agree. Therefore, even if we concluded that Ms. Rogers's actions were an occurrence, or accident under the policy, coverage would still not exist because Dr. Gasparrini did not claim as damages any type of bodily injury or property damage. Consequently, we find that summary judgment was appropriate as a matter of law and affirm the judgment of the circuit court.
¶ 23. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ. CONCUR.
NOTES
[1] The district court abstained from determining the coverage issues when the Circuit Court of Harrison County granted Dr. Gasparrini leave to amend his complaint to join Allstate as a party to the circuit court action.