BARNES, J., FOR THE COURT:
 

 ¶ 1. The motion for rehearing is granted. The previous opinion of this Court is withdrawn, and this opinion is substituted in its place.
 

 ¶ 2. Graham Read Irby, by and through his mother, Karen Collins, filed a wrongful-death suit against the psychiatrist who treated his father, Stuart M. Irby (Irby), prior to Irby's death by suicide. The suit alleged the psychiatrist's intentional and negligent acts created an irresistible impulse in Irby to commit suicide. The circuit court dismissed the action, finding that the claims of intentional acts were barred by the one-year statute of limitations for intentional torts and that Irby's suicide was a superseding event that barred any negligence claims. On appeal, Collins originally argued that despite allegations of intentional acts, the complaint was based in negligence, for which a two-year statute of limitations applied, and the negligence action was not barred.
 

 ¶ 3. Five days prior to this Court's original decision, the Mississippi Supreme Court decided
 
 Pioneer Community Hospital of Newton v. Roberts
 
 ,
 
 214 So.3d 259
 
 (Miss. 2017), in which it held that the minor's saving statute, Mississippi Code Annotated section 15-1-59 (Rev. 2012), applies to wrongful-death actions where a qualified person is available to file suit during the limitations period, but does not do so. On rehearing, Collins argues that under
 
 Pioneer
 
 , the minor's savings statute applied and prevented the dismissal of the complaint, as Graham is a minor, and no qualified person brought suit during the limitations period. We agree with Collins's argument on rehearing that the savings statute applies. Thus, we reverse and remand this matter to the trial court for further proceedings. However, the remand proceedings shall be limited to Collins's intentional-tort claim. We find, as we did in our original decision, that the trial court correctly dismissed Collins's negligence cause of action, as there is no basis for a negligence action for wrongful death by suicide. Thus, it is unnecessary for the
 trial court to revisit the negligence issue on remand. Therefore, we affirm in part and reverse and remand in part.
 

 FACTS
 

 ¶ 4. Prior to his death, Irby sought psychiatric treatment from Dr. Sudhakar Madakasira, a physician specializing in psychiatry. Dr. Madakasira treated Irby for various conditions, including bipolar disorder, anger management, and alcohol abuse. On February 11, 2009, Irby and his wife, Karen Irby, now Karen Collins, were involved in a car accident. Irby suffered a severe, traumatic frontal-lobe brain injury. He continued to see Dr. Madakasira for the brain injury.
 

 ¶ 5. Due to that injury, Irby was deemed incapable of conducting his own business affairs, and coconservators were appointed by the Hinds County Chancery Court, First Judicial District. The conservators petitioned the chancery court for authority to file a divorce complaint on Irby's behalf against Collins. The petition was granted. In support of the divorce complaint, the conservators attached an affidavit executed by Dr. Madakasira on October 28, 2011, while Irby was under his care. The affidavit stated that Irby had told Dr. Madakasira that he was unsure if he wanted a divorce from Collins. However, Dr. Madakasira swore in his affidavit that due to the brain injury, Irby was not capable of making a decision in his or Graham's best interest regarding the divorce. Dr. Madakasira opined that a divorce was in Irby's best interest and that it would be detrimental to Irby's health to remain married to Collins. Dr. Madakasira testified consistently at the divorce hearing. Although Irby testified he did not want a divorce, the divorce was granted.
 

 ¶ 6. On January 17, 2012, Irby told Collins over the phone that he was forced into the divorce and had no reason to live. Irby committed suicide at his home later that day.
 

 ¶ 7. On December 16, 2013, Collins sent Dr. Madakasira and his employer, Psycamore LLC, a notice of intent to commence a medical-malpractice action based on wrongful death.
 
 See
 

 Miss. Code Ann. § 15-1-36
 
 (15) (Rev. 2012) (requiring at least sixty days' prior written notice of intent to begin a professional-negligence claim against healthcare providers). On March 17, 2014, Collins filed her complaint in Hinds County Circuit Court, First Judicial District. The complaint alleged that Dr. Madakasira and Psycamore, through the doctrine of respondeat superior, negligently caused Irby's death by suicide. It was later determined that the proper venue was Rankin County, and an agreed order was entered transferring the case to Rankin County Circuit Court.
 

 ¶ 8. After the case was transferred, Collins was granted leave to file an amended complaint. The amended complaint alleged negligence and added a claim for "intentional acts." The amended portion of the complaint alleged that "[a]s a direct and proximate result of the intentional acts of Dr. Madakasira in assisting the conservators in the prosecution of the divorce action and the granting of a divorce by the Chancery Court[,] Stuart M. Irby developed an irresistible impulse to commit suicide[.]"
 

 ¶ 9. Dr. Madakasira moved to dismiss the case on the grounds that the one-year statute of limitations for intentional torts barred the action and that any negligence claims were barred for failure to state a claim upon which relief can be granted. After a hearing, the circuit court granted the motion to dismiss. Collins's motion for reconsideration was denied. On appeal, Collins argued that the two-year statute of limitations for professional negligence applies and that the case should be reversed
 and remanded for discovery and further proceedings.
 
 [1]
 
 On rehearing, Collins further argues that the statute of limitations was tolled by the minor's savings clause.
 

 STANDARD OF REVIEW
 

 ¶ 10. We review de novo a trial court's decision to grant a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.
 
 Stockstill v. State
 
 ,
 
 854 So.2d 1017
 
 , 1019-20 (¶ 4) (Miss. 2003). When considering a Rule 12(b)(6) motion to dismiss, "the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of her claim."
 
 Stockstill
 
 ,
 
 854 So.2d at 1020
 
 (¶ 4).
 

 DISCUSSION
 

 I. Whether the minor's savings clause tolled the statute of limitations.
 

 ¶ 11. The circuit court found that the one-year statute of limitations for intentional torts applied, barring the claim. It further dismissed Collins's negligence claim, finding that while within the two-year statute of limitations for negligence, a negligence cause of action cannot be sustained for a claim for wrongful death by suicide.
 

 ¶ 12. On rehearing, Collins asserts for the first time that the statute of limitations was tolled by the minor's saving statute, thus making the complaint timely under both the one- and two-year statutes of limitations. Collins's argument is based on the Mississippi Supreme Court's decision in
 
 Pioneer
 
 ,
 
 214 So.3d at 259
 
 , which handed down on March 23, 2017, five days prior to our original decision affirming the circuit court's dismissal.
 
 [2]
 

 ¶ 13.
 
 Pioneer
 
 changed the law regarding the application of the minor's savings statute, section 15-1-59, to wrongful-death actions. Prior to
 
 Pioneer
 
 , the binding case on this issue was
 
 Curry v. Turner
 
 ,
 
 832 So.2d 508
 
 (Miss. 2002).
 
 Curry
 
 held that the minor's savings statute did not toll the period to file a wrongful-death action when a qualified person existed to bring suit during the limitations period.
 

 Id.
 

 ;
 
 see
 

 TRK LLC v. Myles
 
 ,
 
 214 So.3d 191
 
 , 197 (¶ 21) (Miss. 2017) (citing
 
 Miss. Code Ann. § 11-7-13
 
 (Supp. 2016) ) (Qualified persons include: (1) the deceased's personal representative; (2) the deceased's widow, husband, child, father, mother, sister or
 brother or unborn quick child; and (3) "all interested parties."). The supreme court in
 
 Pioneer
 
 held that
 
 Curry
 
 went too far in finding "that the
 
 mere existence
 
 of someone qualified to bring a wrongful-death suit ... precluded the application of the [minor's savings] statute[.]"
 
 Pioneer
 
 , 214 So.3d at 261 (¶ 3) (emphasis in original). The supreme court found instead that "only when someone who is qualified to bring a wrongful-death suit
 
 actually files a wrongful-death suit
 
 on the minor beneficiaries' behalf will the minors savings clause not apply, because, once the suit is filed, the running of the statute of limitations is immaterial."
 
 Id.
 
 (emphasis added). Importantly, the wrongful-death statute states that "there shall be but one (1) suit for the same death[,] which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits."
 
 Miss. Code Ann. § 11-7-13
 
 .
 

 ¶ 14. Collins asserts on rehearing that she did not argue tolling before the trial court or in her initial brief on appeal because, at that time,
 
 Curry
 
 was still in effect, and qualified persons existed who could have brought suit during the statute of limitations. Collins is not qualified to recover under the wrongful-death statute, since she and Irby were divorced at the time of his death.
 
 See
 
 id.
 

 (Wrongful-death beneficiaries-a more limited class than one qualified to bring suit under the wrongful-death statute-include: "the widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child[.]"). Collins states that Irby was survived by two adult children, who were qualified under the statute to bring suit. Thus, under
 
 Curry
 
 , the limitations period in the wrongful-death statute was not tolled by the minor's saving statute because qualified persons existed. Collins now argues that since the supreme court's decision in
 
 Pioneer
 
 overruled
 
 Curry
 
 's holding, the statute of limitations under the minor's savings clause as to Graham was tolled, making the suit timely.
 

 ¶ 15. In
 
 Pioneer
 
 , the minor beneficiaries (the decedent's children) had an aunt who was qualified under the wrongful-death statute as the decedent's sister to file a wrongful-death suit, but she did not file one.
 
 Pioneer
 
 , 214 So.3d at 261 (¶ 3).
 
 [3]
 
 The aunt petitioned for guardianship of the children, specifically requesting authorization to file a wrongful-death claim or make a settlement for damages on their behalf.
 
 Id.
 
 at 262 (¶ 7). The chancellor granted the petition and entered an order of guardianship as to the older child.
 
 Id.
 
 at (¶ 8). A notice-of-claim letter was sent to the treating hospital and physician, but a suit was not pursued.
 
 Id.
 
 at 261 (¶ 6). Later, the guardianship action was dismissed as to the older child because the aunt never filed an oath or letters of guardianship.
 
 Id.
 
 at 262 (¶ 8). An order of guardianship was never entered for the younger child, and this action was dismissed as well.
 
 Id.
 

 ¶ 16. Shortly after turning twenty-one, the older child filed a wrongful-death suit on behalf of all wrongful-death beneficiaries against the hospital and physician.
 
 Id.
 
 at (¶ 9). The hospital and physician argued the statute of limitations had run because the aunt could have filed suit during the limitations period.
 
 Id.
 
 at 264 (¶ 22). The supreme court found that the minor's saving statute tolled the statute of limitations because the aunt "had been neither appointed guardian nor authorized by the
 chancery court to bring an action on [the children's] behalf."
 
 Id.
 
 at 266 (¶¶ 29-31). It further found that the aunt's existence as a person with standing did not preclude application of the minor's saving statute.
 
 Id.
 

 ¶ 17. The supreme court in
 
 Pioneer
 
 cited
 
 U.S. Fidelity & Guaranty Co. v. Conservatorship of Melson
 
 ,
 
 809 So.2d 647
 
 , 653 (¶ 25) (Miss. 2002), which found the minor's saving clause inapplicable where the minor had a conservator with full authority to bring suit during the statute of limitations.
 
 Pioneer
 
 , 214 So.3d at 266 (¶ 28). Because the legal right to file suit lay with the conservator, Mississippi Code Annotated section 15-1-53 (Rev. 2012) precluded tolling. Section 15-1-53 states:
 

 When the legal title to property or a right in action is in an executor, administrator, guardian, or other trustee, the time during which any statute of limitations runs against such trustee shall be computed against the person beneficially interested in such property or right in action, although such person may be under disability and within the saving of any statute of limitations; and may be availed of in any suit or actions by such person.
 

 ¶ 18. "[U]nder [ section] 15-1-53, if a person who is subject to infancy or unsoundness of mind does in fact
 
 have a guardian or conservator appointed for them
 
 , then the action may be brought in the name of that guardian or conservator, without the consideration of any savings clause."
 
 Melson
 
 ,
 
 809 So.2d at 653-54
 
 (¶ 27) (emphasis added). In holding the savings statute inapplicable in
 
 Melson
 
 , the supreme court reasoned that "[w]here a guardian or conservator has been
 
 court
 
 [
 
 -
 
 ]
 
 appointed
 
 for a ward, there is no logical or equitable reason to prevent the running of the statute of limitations inasmuch as that guardian or conservator is fully authorized to employ attorneys and bring actions on their behalf."
 

 Id.
 

 at 654
 
 (¶ 27) (emphasis added) (citing
 
 McCain v. Memphis Hardwood Flooring Co.
 
 ,
 
 725 So.2d 788
 
 (Miss. 1998) (finding that the statute of limitations is not tolled when a person of unsound mind has a guardian) ).
 

 ¶ 19. Applying this holding in
 
 Pioneer
 
 , the supreme court held that because "no oath had been filed" by the aunt "and no letters of guardianship had been entered" on behalf of the oldest of the minor children, the child "did not 'in fact have a guardian appointed for her' who had the legal authority to bring a suit on her behalf."
 
 Pioneer
 
 , 214 So.3d at 266 (¶ 30) (quoting
 
 Melson
 
 ,
 
 809 So.2d at 653-54
 
 (¶ 27) ). Thus, because there was no one with a legal duty to bring suit on the minors' behalf, the savings statute tolled the statute of limitations.
 

 Id.
 

 ¶ 20. There is no indication here that Collins had a legal duty to file suit on Graham's behalf. Collins did not appear as Graham's court-appointed guardian. Rather, she appeared as his mother and next friend. As Graham's mother, Collins had
 
 standing
 
 to file suit on his behalf. However, our decision hinges on whether Collins's status as his mother and next friend bestowed on her the
 
 duty
 
 to file suit within the statute of limitations. Black's Law Dictionary (10th ed. 2014) defines "next friend" as "[s]omeone who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian."
 

 ¶ 21. While not in the context of a wrongful-death claim, the supreme court discussed this issue in
 
 Vice v. Department of Human Services
 
 ,
 
 702 So.2d 397
 
 (Miss. 1997). In
 
 Vice
 
 , Pamela Smith sued Ronald Vice for a child-support arrearage he had been ordered to pay seven years prior.
 

 Id.
 

 at 398
 
 (¶ 2). Smith argued the minor's savings statute tolled the three-year statute
 of limitations.
 

 Id.
 

 at 399
 
 (¶ 10). Vice countered that the minor's savings statute was inapplicable because Smith could have brought suit on the children's behalf during the statute of limitations.
 

 Id.
 

 at 400
 
 (¶ 15). The supreme court found no merit to Vice's argument.
 

 Id.
 

 The supreme held that because Smith, the custodial parent, was "not a real party in interest sufficient to bar the child's recovery of past-due support payments[,] ... it would 'defy reason' to allow the statute of limitations to run during the disability of the child."
 

 Id.
 

 at (¶ 17). Instead, "where a minor holds the legal right, ... the statute of limitations does not begin to run until the disability of minority is removed."
 

 Id.
 

 at (¶ 14).
 

 ¶ 22. Further, in
 
 Thiroux ex rel. Cruz v. Austin ex rel. Arceneaux
 
 ,
 
 749 So.2d 1040
 
 , 1041 (¶ 1) (Miss. 1999), William Albert Thiroux Jr. was murdered, leaving his two minor children as his sole heirs at law. Almost three and a half years later, the children's legal guardian brought a wrongful-death suit on their behalf against the murderer.
 

 Id.
 

 While the supreme court's opinion in
 
 Thiroux
 
 does not discuss the guardian's relationship to the children, the supreme court in
 
 Curry
 
 noted that "[t]he children's guardian in
 
 Thiroux
 
 did not meet the qualification of being a person in esse because, under the wrongful[-]death statute, the guardian was not entitled to bring the suit."
 
 Curry
 
 ,
 
 832 So.2d at
 
 516 n.5. The supreme court in
 
 Thiroux
 
 found that the minor's savings statute tolled the one-year statute of limitations as to the minor children.
 
 Thiroux
 
 ,
 
 749 So.2d at 1042
 
 (¶ 4).
 

 ¶ 23. Collins was not a qualified beneficiary under the wrongful-death statute, nor is there any evidence she had been court appointed to bring suit on Graham's behalf. Rather, she brought suit as Graham's mother and next friend. Applying
 
 Pioneer
 
 , we find that the minor's saving statute tolled the statute of limitations, making the suit timely under either the one-or two-year statute of limitations. Thus, we reverse and remand for further proceedings. However, as explained below, the proceedings shall be limited to Collins's intentional-tort claim, as the trial court correctly dismissed Collins's negligence cause of action.
 

 II. Whether Collins can sustain a negligence cause of action for Irby's suicide.
 

 ¶ 24. To the extent that Collins's complaint alleges negligence, we find these claims were correctly dismissed for failure to state a claim upon which relief can be granted.
 

 ¶ 25. Collins's original complaint alleged only medical negligence. In November 2014, after Collins's complaint was filed, the Mississippi Supreme Court handed down its decision in
 
 Truddle v. Baptist Memorial Hospital-DeSoto Inc.
 
 ,
 
 150 So.3d 692
 
 (Miss. 2014). The parties agree that
 
 Truddle
 
 is the controlling case for actions for wrongful death by suicide.
 
 Truddle
 
 states that "to sustain a cause of action for a suicide ..., the plaintiff must show that the defendant committed an
 
 intentional act
 
 that [proximately caused] an irresistible impulse [in the decedent] to commit suicide[.]"
 

 Id.
 

 at 697
 
 (¶ 19) (emphasis added) (citing
 
 State ex rel. Richardson v. Edgeworth
 
 ,
 
 214 So.2d 579
 
 , 586-88 (Miss. 1968) ). This is an exception to common law, which prohibited recovery for wrongful death by suicide, as "suicide is an 'unforeseeable, intervening cause[,] which breaks the causal connection between the wrongful act and the death.' "
 
 Truddle
 
 ,
 
 150 So.3d at 695
 
 (¶ 11) (quoting
 
 Edgeworth
 
 ,
 
 214 So.2d at
 
 586 ).
 

 ¶ 26. After
 
 Truddle
 
 handed down, the circuit court granted Collins leave to
 amend the complaint to comply with
 
 Truddle
 
 's intentional-act pleading requirement. However, the amended complaint still contained negligence allegations.
 

 ¶ 27. Collins's amended complaint alleges the following negligent acts: (1) Dr. Madakasira "[f]ail[ed] to properly monitor [Irby's] mental health"; and (2) Dr. Madakasira "[f]ail[ed] to prescribe an appropriate treatment for ... Irby to prevent his suicide in spite of the fact that Dr. Madakasira was well aware of Irby's history and his suicidal ideations." These negligence allegations do not state a cause of action under
 
 Truddle
 
 , since a wrongful-death action for suicide cannot be sustained solely based on allegations of "medical malpractice, i.e., negligence."
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 15).
 
 [4]
 

 ¶ 28. "A medical-malpractice cause of action in Mississippi tracks the typical negligence action[.]"
 

 Id.
 

 at (¶ 16). The plaintiff must prove: "(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such a duty by the defendant."
 

 Id.
 

 (quoting
 
 Johnson v. Pace
 
 ,
 
 122 So.3d 66
 
 , 68 (¶ 8) (Miss. 2013) ). In proving these elements, the plaintiff must show "a
 
 causal connection
 
 between the breach and the [injury], such that the breach is the proximate cause of the [injury]."
 
 Double Quick Inc. v. Lymas
 
 ,
 
 50 So.3d 292
 
 , 298 (¶ 30) (Miss. 2010) (emphasis added).
 

 ¶ 29. However, "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.' "
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 17) (quoting
 
 Shamburger v. Grand Casino of Miss. Inc./Biloxi
 
 ,
 
 84 F.Supp.2d 794
 
 , 798 (S.D. Miss. 1998) ). "[A] rebuttable presumption exists 'that a person will not destroy himself by suicide.' "
 
 Id.
 
 at 695 (¶ 11) (quoting
 
 Edgeworth
 
 ,
 
 214 So.2d at
 
 585 ). Recovery for a wrongful suicide death is permissible only when the defendant committed an intentional act that created "an irresistible impulse in the decedent to take his or her own life."
 

 Id.
 

 (citing
 
 Edgeworth
 
 ,
 
 214 So.2d at
 
 586-88 ). "[W]here the suicide is committed in response to an uncontrollable impulse, recovery may be had if the mental state of [the] deceased was substantially caused by the defendants' intentional wrongful acts."
 
 Edgeworth
 
 ,
 
 214 So.2d at 587
 
 . In recognizing this exception to the common-law rule barring recovery for suicide, "[t]he
 
 Edgeworth
 
 [c]ourt reasoned that intentional acts which cause an irresistible impulse to commit suicide should be compensable because 'a higher degree of responsibility is imposed upon a wrongdoer whose conduct was intended to cause harm than upon one whose conduct was negligent.' "
 
 Truddle
 
 ,
 
 150 So.3d at 696
 
 (¶ 11) (quoting
 
 Edgeworth
 
 ,
 
 214 So.2d at
 
 587 ).
 

 ¶ 30. "Nothing in Mississippi caselaw, save the irresistible-impulse doctrine, ... abrogates the general rule that suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.' "
 

 Id.
 

 at (¶ 17). As stated by the United States District Court for the Northern District of Mississippi, "[a]pplying the substantive law of the State of Mississippi, a claim for
 wrongful suicide death can be maintained only where it can be shown that as a result of defendant's intentional torts, decedent acted under an irresistible impulse in committing suicide."
 
 Hare v. City of Corinth
 
 ,
 
 814 F.Supp. 1312
 
 , 1326 (N.D. Miss. 1993) (vacated and remanded on other grounds,
 
 74 F.3d 633
 
 (5th Cir. 1996) ). The holding in
 
 Truddle
 
 specifically extended this principle to medical-malpractice claims.
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 18).
 

 ¶ 31. Therefore, under
 
 Truddle
 
 , while a claim for wrongful suicide death under the irresistible-impulse doctrine set out in
 
 Edgeworth
 
 may be sustained based on a doctor's actions, the claim cannot lie in medical negligence.
 

 Id.
 

 at (¶ 17).
 
 [5]
 
 While
 
 Truddle
 
 discusses a possible exception for circumstances where the decedent was under the custody and control of a physician or facility, such as a mental institution, that exception does not apply here.
 

 Id.
 

 at 697-98
 
 (¶¶ 20-22). Therefore, the claim must stem from an intentional tort.
 

 Id.
 

 Because the suicide action must be based on an intentional tort, Collins's negligence claims do not state a cause of action for which relief can be granted and were correctly dismissed.
 

 ¶ 32. We disagree with the dissent's finding that
 
 Truddle
 
 permits a medical-negligence cause of action for Irby's suicide death. First,
 
 Truddle
 
 clearly states that an intentional act must be pled to support a cause of action for suicide, and our caselaw is well established that an intentional act cannot form the basis of a negligence claim.
 

 Id.
 

 at 697
 
 (¶ 19) ;
 
 Jordan v. Wilson
 
 ,
 
 5 So.3d 442
 
 , 447 (¶ 18) (Miss. Ct. App. 2008) ("[A]n intentional tort cannot be committed negligently."). Second, a medical-negligence claim cannot be sustained based on Irby's suicide because "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action' " of Dr. Madakasira and Irby's death.
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 17) (quoting
 
 Shamburger
 
 ,
 
 84 F.Supp.2d at
 
 798 ). If Irby's death had not been the result of suicide, we would agree with the dissent that the medical-negligence action could be sustained. However, in wrongful-suicide-death cases, "a higher degree of responsibility" than negligence must be demonstrated to recover damages.
 
 Truddle
 
 ,
 
 150 So.3d at 696
 
 (¶ 11). Thus, based on the facts presented, there is no negligence cause of action for which relief can be granted.
 

 ¶ 33. The dissent argues that the supreme court's recent decision in
 
 Singing River Health System v. Vermilyea
 
 , 2016-IA-01096-SCT,
 
 242 So.3d 74
 
 ,
 
 2018 WL 1323581
 
 (Miss. Mar. 15, 2018), provides an exception allowing Collins to pursue her negligence claim based on Dr. Madakasira's assumption of a duty of care as Irby's psychiatrist. We disagree. In
 
 Singing River
 
 , Randy Vermilyea threatened to commit suicide by jumping off a bridge.
 
 Id.
 
 at 75-76,
 
 2018 WL 1323581
 
 , at *1 (¶ 2). Law-enforcement officers spent ninety minutes talking him off the edge of the bridge and then took him to the Singing River Hospital emergency room.
 

 Id.
 

 He was admitted, evaluated, and released a few hours later-alone, without shoes, and without any attempt by hospital staff to contact his family to inform them of the suicide attempt.
 

 Id.
 

 Vermilyea called his daughter to
 pick him up, and, within minutes of his discharge, he jumped to his death from a bridge.
 

 Id.
 

 Vermilyea's wife and daughter sued Singing River, claiming in an amended complaint that it had failed to exercise reasonable care and attention to his mental and emotional condition-specifically, that it:
 

 failed to assess and treat ... Vermilyea's psychiatric condition, failed to hospitalize him, negligently and prematurely released him from the hospital, failed to take reasonable steps to prevent him from harming himself, failed to follow the standard of care applicable to a depressed and suicidal patient, and failed to inform [his wife or daughter] of his attempted suicide and need for follow-up care.
 

 Id.
 

 at (¶ 3). His daughter also alleged negligent infliction of emotional distress, as she had witnessed the suicide.
 

 Id.
 

 [6]
 

 ¶ 34. Singing River moved to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted because all the claims were negligence based.
 
 Id.
 
 at 76-77,
 
 2018 WL 1323581
 
 , at *2 (¶ 4). Citing
 
 Truddle
 
 , Singing River argued that the plaintiffs were required to plead intentional conduct, leading to an irresistible impulse in Vermilyea to commit suicide.
 

 Id.
 

 Without an allegation of intentional conduct, Singing River argued, the claim failed as a matter of law.
 

 Id.
 

 The trial court denied the motion, and the supreme court affirmed the decision upon interlocutory review.
 
 Id.
 
 at 84,
 
 2018 WL 1323581
 
 , at *7 (¶ 29). The supreme court, also citing
 
 Truddle
 
 , found that while suicide generally breaks the causal nexus between the defendant's actions and the suicide death in a medical-negligence case, this rule does not apply when the facility had the duty to safeguard a decedent/patient who was in its "custody and control" and the facility had "the ability to control the patient's conduct."
 
 Id.
 
 at 81,
 
 2018 WL 1323581
 
 , at *5 (¶ 19).
 

 ¶ 35. When the facility assumes a duty of care for a patient who is under its custody and control, and it is foreseeable that a breach of that duty could result in immediate suicide, liability exists "for the [facility's] negligent failure to prevent ... [the] act of self-harm."
 

 Id.
 

 The supreme court held that this exception includes the negligent discharge of a suicidal patient, because "[n]egligently discharging a suicidal patient and leaving him to his own devices is not materially different from failing to provide a safe environment inside the facility."
 
 Id.
 
 at 84,
 
 2018 WL 1323581
 
 , at *7 (¶ 26).
 

 ¶ 36. While the amended complaint here alleged that Dr. Madakasira knew that Irby had threatened suicide in the past and that his suicide was foreseeable, there was no allegation that Irby was under Dr. Madakasira's custody or control or that he had recently been under any doctor's or facility's custody or control and negligently discharged, as
 
 Singing River
 
 requires.
 
 Id.
 
 at 81,
 
 2018 WL 1323581
 
 , at *5 (¶ 19) (citing
 
 Truddle
 
 ,
 
 150 So.3d at 695
 
 (¶ 6) (holding that no medical-negligence cause of action existed for the decedent's suicide death where the decedent was discharged from the hospital six days prior to his death) ). Rather, Irby was simply receiving treatment from Dr. Madakasira as his
 psychiatrist. Thus, the dissent's reliance on
 
 Singing River
 
 is misplaced. We do note, however, that the supreme court in
 
 Singing River
 
 reaffirmed that "the general rule that suicide is 'an independent, intervening and superseding event' that breaks the causal nexus between the defendant's wrongful act and the death" and that this principle "extends to medical-malpractice claims."
 
 Id.
 
 at 79,
 
 2018 WL 1323581
 
 , at *3 (¶ 13). That is, in a medical-negligence action for a suicide death, unless an exception to the general rule is found, the third element of negligence-causation-cannot be sustained.
 

 Id.
 

 The dissent cites no exception to the general rule. On remand, Collins can assert the allegations in the amended complaint that raise an intentional-tort cause of action; but there is no basis in our law for a negligence cause of action, since no exception to the intentional-act pleading requirement has been alleged.
 

 ¶ 37. We also disagree with the dissent's statement that our decision effectively holds "that intentional conduct cannot serve as the basis for a medical-malpractice action." The dissent asserts that this decision departs from our holding in
 
 Chitty v. Terracina
 
 ,
 
 16 So.3d 774
 
 (Miss. Ct. App. 2009). In
 
 Chitty
 
 , we held that whether a doctor's "alleged actions were intentional, or merely negligent, is not determinative" of whether a claim falls under the medical-malpractice statute; rather, "the main issue" is "whether the tort arises out of the course of medical, surgical or other professional services."
 

 Id.
 

 at 779
 
 (¶ 12). We do not stray from that decision. We acknowledge that the plain language of our medical-malpractice statute encompasses all applicable torts against physicians; it is not limited to the tort of negligence. The statute specifically states that "
 
 no claim in tort
 
 may be brought against a licensed physician ... [for] wrongful death arising out of the course of medical, surgical or other professional services[.]"
 
 Miss. Code Ann. § 15-1-36
 
 (2) (emphasis added).
 
 [7]
 
 Regardless, the issue before us on rehearing is not whether an intentional tort can form the basis of a medical-malpractice claim, but whether a medical professional's negligence can be the proximate cause of Irby's suicide.
 

 ¶ 38. Taking the allegations in the complaint as true, Collins's medical-negligence allegations do not state a claim upon which relief can be granted. Suicide is an independent, intervening, and superseding event that breaks the nexus between any alleged wrongful act of Dr. Madakasira and Irby's death. Without this nexus, a causal connection for a medical-negligence action cannot be formed, and the claims cannot be sustained. The trial court correctly dismissed the negligence allegations in the complaint.
 

 III. Whether Collins's complaint alleges an intentional tort sufficient to sustain a cause of action for wrongful death by suicide.
 

 ¶ 39. To comply with
 
 Truddle's
 
 intentional-act pleading requirement, Collins moved for, and was granted, leave to amend the complaint. The pertinent section of the amended complaint reads:
 

 INTENTIONAL ACTS OF DEFENDANT
 

 ....
 

 15. Dr. Madakasira knowingly engaged in a course of conduct with the conservators of Stuart M. Irby to have a divorce granted to Irby by the action prosecuted by the conservators even though Stuart Irby expressed his opposition to the divorce. By advising with the conservators in the divorce action, which resulted in a divorce being granted, Dr. Madakasira stepped outside of the psychiatrist-patient relationship and created a conflict of interest with his patient, Stuart Irby. As Irby's attending psychiatrist for several years, Dr. Madakasira knew that Stuart Irby was mentally and emotionally fragile and that he had threat[en]ed to commit suicide in the past. However, notwithstanding his personal knowledge of lrby's mental condition[,] Dr. Madakasira intentionally participated with the conservators to secure a divorce for Stuart Irby from his wife, [Collins,] and took an active part in the chancery court proceedings which resulted in the divorce being granted against Stuart Irby's will.
 

 16. As a direct and proximate result of the intentional acts of Dr. Madakasira in assisting the conservators in the prosecution of the divorce action and the granting of a divorce by the Chancery Court[,] Stuart M. Irby developed an irresistible impulse to commit suicide and on January 17, 2012[,] he committed suicide.
 

 17. The intentional conduct of Dr. Madakasira, as aforesaid, created an irresistible impulse in Stuart Irby to commit suicide so that he took his own life. Based upon the negligence and intentional acts of the defendants it was foreseeable that Stuart M. Irby would commit suicide.
 

 18. Madakasira's intentional conduct, as aforesaid, was the proximate cause or a proximate contributing cause of the irresistible impulse suffered by Stuart M. Irby to commit suicide and rendered him unable to discern the nature or consequences of suicide which was the proximate cause or was a proximate contributing cause of Stuart Irby's wrongful death.
 

 ¶ 40. The trial court found the allegations in the amended complaint sounded in intentional tort, and thus were barred by the one-year statute of limitations. In her original brief on appeal, Collins vehemently argued that all claims in the complaint were negligence-based, as any intentional-tort claims were barred by the one-year statute of limitations. On the contrary, on rehearing, we are only looking at the intentional-act allegations, which were required to be pled under
 
 Truddle
 
 , to determine if the amended complaint states a claim upon which relief can be granted.
 

 ¶ 41. While we have found the statute of limitations was tolled as to either claim, the distinction between the claims is important, as we must determine whether Collins's complaint states a claim for which relief can be granted on remand. Although Collins originally argued that the complaint alleged only negligence, "[s]ubstance prevails over form."
 
 Sanderson Farms Inc. v. McCullough
 
 ,
 
 212 So.3d 69
 
 , 74 (¶ 13) (Miss. 2017). We are "not bound by the claims set forth in [the complaint]."
 

 Id.
 

 Rather, "[t]he question ... is whether the
 
 substance
 
 of [the] claim ... sounds in intentional tort or negligence."
 

 Id.
 

 at 75
 
 (¶ 13).
 

 ¶ 42. Despite Collins's original assertion that the claims sound in negligence, an intentional act cannot form the basis of a negligence claim. "Negligence is a failure to do what [a] reasonable person would do under the same or similar circumstances," resulting in a breach of the applicable standard of care and injury to
 the plaintiff.
 
 Estate of St. Martin v. Hixson
 
 ,
 
 145 So.3d 1124
 
 , 1128 (¶ 9) (Miss. 2014). Intent "denotes that the actor desires to cause the consequences of his act."
 
 S. Farm Bureau Cas. Ins. v. Allard
 
 ,
 
 611 So.2d 966
 
 , 968 (Miss. 1992) (quoting Restatement (Second) of Torts § 8A(a) (1965) ). Intentional behavior designed to bring about the plaintiff's injury forms the basis of an intentional tort,
 

 id.
 

 , and "an intentional tort cannot be committed negligently."
 
 Jordan
 
 ,
 
 5 So.3d at 447
 
 (¶ 18).
 

 ¶ 43. "[A] claim alleging an intentional tort and a claim alleging negligence are mutually exclusive, in that, one who is found to have acted negligently cannot at the same time be found to have acted intentionally."
 

 Id.
 

 While our law permits a party to allege inconsistent claims based on negligence and intentional tort,
 

 id.
 

 at 448
 
 (¶ 19) (citing M.R.C.P. 8 ), this is not what Collins alleges. Rather, Collins alleges that Dr. Madakasira's intentional acts serve as the basis for the negligence claim. There is no basis in our law to support this argument.
 
 See
 

 id.
 

 at 447-48
 
 (¶¶ 18-19).
 

 ¶ 44. Thus, we look to the amended complaint's substance to determine whether its claims lie in negligence or intentional tort.
 
 See
 

 Howard v. Wilson
 
 ,
 
 62 So.3d 955
 
 , 956 (¶ 6) (Miss. 2011). Collins's amended complaint alleges the following intentional acts: "Dr. Madakasira intentionally participated with the conservators to secure a divorce for ... Irby from his wife, [Collins,] and took an active part in the chancery court proceedings which resulted in the divorce being granted against ... Irby's will," and this "intentional conduct ... created an irresistible impulse in ... Irby to commit suicide." The first sentence of the punitive-damages section of the complaint states, "Dr. Madakasira[ ] willfully, deliberately[,] and intentionally participated in the divorce proceedings against the will and wishes of ... Irby[,] which resulted in a divorce which Mr. Irby did not want and resulted in Mr. Irby being forced to divorce his wife against his will."
 

 ¶ 45. We find these allegations-that Dr. Madakasira acted "knowingly," "intentionally," "active[ly]," "willfully," and "deliberately"-sound in intentional tort, regardless of the title Collins gives them.
 
 [8]
 
 We further find that Collins's intentional-tort claims do not state a claim for medical malpractice. A medical-malpractice claim must "aris[e] out of the course of medical, surgical[,] or other professional services[.]"
 
 Miss. Code Ann. § 15-1-36
 
 (2). The amended complaint, under the section titled "INTENTIONAL ACTS OF DEFENDANT," states that "[b]y advising with the conservators in the divorce action, which resulted in a divorce being granted, Dr. Madakasira
 
 stepped outside of the psychiatrist-patient relationship
 
 and created a conflict of interest with his patient, Stuart Irby." (Emphasis added). As Collins alleges Dr. Madakasira's intentional acts were committed "outside of the psychiatrist-patient relationship," not arising out of the course of it, the intentional-act allegations do not fall within the medical-malpractice statute.
 

 ¶ 46. Looking at the substance of the amended complaint, we find the alleged intentional acts lie in intentional tort. While we make no finding as to the merits of the complaint, we find that the complaint alleges sufficient intentional acts to survive a Rule 12(b)(6) motion to dismiss. As the statute of limitations is no longer at issue due to the minor's saving statute, we
 find the intentional act allegations in the complaint may be viable, even though those acts arise in a medical context. Therefore, we remand this matter to the circuit court for further proceedings on Collins's intentional-tort claims.
 

 CONCLUSION
 

 ¶ 47. Under the supreme court's holding in
 
 Pioneer
 
 , we find the minor's savings statute tolled the statute of limitations. While making no comment as to the merits of the complaint, we further find that Collins's amended complaint alleged sufficient intentional acts to survive a Rule 12(b)(6) motion to dismiss. Thus, we reverse this matter for further proceedings. However, as the wrongful-death claim for Irby's suicide must lie in intentional tort, the remand proceedings shall be limited to the claims raised for intentional tort.
 
 See
 

 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 17). Collins's negligence claims were correctly dismissed for failure to state a claim upon which relief can be granted, as a negligence cause of action for suicide cannot be sustained on the facts of this case.
 

 ¶ 48.
 
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 GRIFFIS, P.J., WILSON, GREENLEE AND TINDELL, JJ., CONCUR. LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., CARLTON AND WESTBROOKS, JJ. FAIR, J., NOT PARTICIPATING.
 

 Collins sent a notice-of-claim letter on December 16, 2013, which tolled the statute of limitations for sixty days.
 
 See
 

 Miss. Code Ann. § 15-1-36
 
 (15) ("If the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others."). Thus, the two-year statute of limitations would have run on March 18, 2014.
 

 Generally, this Court will not consider issues that were not first presented to the trial court.
 
 Mid-S. Retina LLC v. Conner
 
 ,
 
 72 So.3d 1048
 
 , 1051 (¶ 11) (Miss. 2011). However, an exception to this rule is made for changes in law that occur during the pendency of an appeal.
 

 Id.
 

 at 1052
 
 (¶ 13). As our supreme court has held, unless designated as prospective, "newly enunciated rules of law are applied retroactively to cases that are pending trial or that are on appeal, and not final at the time of the enunciation."
 

 Id.
 

 When
 
 Pioneer
 
 was decided, this appeal was pending before this Court. As
 
 Pioneer
 
 is an intervening change in law-decided after trial but before the completion of this appeal-and is not designated as prospective, Collins "is entitled to have [this] case decided in accordance with it."
 
 James v. State
 
 ,
 
 829 So.2d 728
 
 , 729 (¶ 7) (Miss. Ct. App. 2002). Thus, this issue may be raised for the first time on appeal.
 
 Mid-S. Retina
 
 ,
 
 72 So.3d at 1052
 
 (¶ 14).
 

 While she had standing to file suit, the aunt in
 
 Pioneer
 
 was "statutorily precluded from recovering any damages ..., [as] any wrongful-death damages belong[ed] exclusively to [the decedent's] two daughters."
 
 Pioneer
 
 , 214 So.3d at 265-65 (¶ 23) ("[W]ho has statutory standing to bring suit is broader than who may recover damages.").
 

 The supreme court discussed an exception to its finding in
 
 Truddle
 
 for cases where the decedent was under the defendant's custody and control, such as in a mental facility.
 
 Truddle
 
 ,
 
 150 So.3d at 697-98
 
 (¶¶ 20-22). The exception does not apply here, as there is no allegation that Irby was under Dr. Madakasira's or Psycamore's custody or control.
 

 In finding that the irresistible-impulse doctrine extends to medical-negligence claims, the supreme court cited
 
 Haney v. River Oaks Hospital
 
 , 2006-CA-00219-SCT (Order, May 17, 2007), which involved "a medical-negligence action against a doctor and hospital where a patient committed suicide after being released from the hospital over her family's objections."
 
 Truddle
 
 ,
 
 150 So.3d at 697
 
 (¶ 18). The supreme court noted that it affirmed per curiam the finding of summary judgment in favor of the doctor and hospital.
 

 Id.
 

 The amended complaint actually alleged
 
 intentional
 
 infliction of emotional distress.
 
 Singing River
 
 ,
 
 242 So.3d at 76
 
 ,
 
 2018 WL 1323581
 
 , at *1 (¶ 3). However, the supreme court found the claim was mislabeled and was actually one for
 
 negligent
 
 infliction of emotional distress.
 
 Id.
 
 at 84,
 
 2018 WL 1323581
 
 , at *7 (¶ 28) (citing
 
 Sanderson Farms Inc. v. McCullough
 
 ,
 
 212 So.3d 69
 
 , 74-75 (¶ 13) (Miss. 2017) (holding that a complaint's "substance prevails over form") ).
 

 We note that the medical-malpractice statute also states that "[n]o action based upon the health care provider's
 
 professional negligence
 
 may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action."
 
 Miss. Code Ann. § 15-1-36
 
 (15) (emphasis added). Either this means that notice is only required for negligence claims, or that only negligence actions can be brought under the medical-malpractice statute. However, this issue has not been decided by our supreme court, and it is unnecessary to address it here.
 

 While not titled as such, the claims sound akin to intentional infliction of emotional distress, which "is of like kind or classification as the torts enumerated in ... [s]ection 15-1-35[.]"
 
 Jones v. Fluor Daniel Servs. Corp.
 
 ,
 
 32 So.3d 417
 
 , 425 (¶ 36) (Miss. 2010).